**John E. BERNARD, Appellant,**

v.

**Jesse BROWN, Secretary of Veterans Affairs, Appellee.**

**No. 91–1082.**

United States Court of Veterans Appeals.

Argued Nov. 24, 1992.

Decided March 22, 1993.

Michael P. Horan, Washington, DC, for appellant.

Deborah W. Singleton, with whom James A. Endicott, Jr., Gen. Counsel, Barry M. Tapp, Asst. Gen. Counsel, and R. Randall Campbell, Deputy Asst. Gen. Counsel, Washington, DC, were on the brief, for appellee.

Before KRAMER, IVERS, and STEINBERG, Associate Judges.

STEINBERG, Associate Judge:

The appellant, Vietnam veteran John E. Bernard, appeals an April 19, 1991, Board of Veterans' Appeals (BVA or Board) decision denying service-connected disability compensation for multiple sclerosis. *John E. Bernard*, BVA 91–28831 (Apr. 19, 1991). The Court will vacate the BVA decision and remand the case to the Board for proceedings consistent with this opinion.

## I. BACKGROUND

The veteran served on active duty in the United States Army from February 1971 to March 1972, including combat duty in Vietnam. R. at 1. His induction and separation physicals are negative for defects. R. at 2–5, 13–18. Service medical records indicate that he was treated in September 1971 for chills, fever, nausea, and headaches (R. at 6), and that he suffered a "small avulsion fracture" of the left ankle as the result of a fall in November 1971, requiring him to wear a cast for four weeks (R. at 7–10).

In 1980, a Veterans' Administration (now Department of Veterans Affairs) (VA) regional office (RO) awarded service connection for a left-ankle disability, but rated the disability noncompensable. R. at 31. In an October 1980 statement submitted to the RO, the veteran stated that he had been hospitalized for multiple sclerosis (MS) at the Brooklyn VA Medical Center (MC) since September 15, 1980, and that he had been told that the condition may have been present as far back as 1978. R. at 32–33. The RO subsequently obtained the Brooklyn VAMC records, dated October 12, 1980, which stated that the veteran had been admitted with a one-month history of symptoms which included numbness of the hands and feet, loss of coordination, intermittent blurring of vision, intermittent headaches, and difficulty in urinating. R. at 35. The diagnoses were MS and peripheral neuropathy. *Ibid.*

In a March 1981 decision, the RO denied service-connected disability compensation for MS. R. at 43–44. In October 1981, the RO awarded the veteran non-service-connected pension benefits due to permanent and total disability from the MS. He was also awarded special monthly pension due to the need for regular aid and attendance but was again denied service connection for MS. R. at 48. The veteran appealed to the BVA from the RO's denial of service connection for MS. R. at 50. In support of his claim for service connection for MS, he subsequently submitted additional evidence consisting of medical records and physicians' statements reflecting his treatment since at least 1978 by VA and private physicians for urinary retention problems. R. at 52–53, 68, 70, 74, 81.

In a January 27, 1984, decision, the BVA denied service connection for MS. R. at 92–96. The Board concluded that there was no evidence of MS in service or within the seven-year period for establishing service connection for MS on a presumptive basis (*see* 38 U.S.C.A. § 1112(a)(4) (West 1991)), and that, although the veteran apparently had been treated for urinary retention problems in 1978 (within the presumption period), there was "no clinical evidence establishing he had a bladder dysfunction of the type which might be presenting symptoms of [MS]." R. at 95.

The veteran was hospitalized at the Brooklyn VAMC from July 7 to 27, 1984, for acute exacerbation of his MS. R. at 100. Another hospitalization there from March 24 to June 5, 1987, as part of an MS research project, resulted in diagnoses of, inter alia, "[MS] far advanced", "essential hypertension", and "urinary tract infection". R. at 97. In February 1988, he was given a VA psychiatric evaluation by Dr. Grace Frank, at which it was noted that the veteran reported having had a "euphoric and cheerful" personality during his combat duty in Vietnam. R. at 104, Dr. Frank stated: "Hysterical features are described in the literature as not uncommon in [MS]. Euphoria and cheerfulness is also described in the literature as characteristic." *Ibid.* Her report also indicated that the veteran in 1978 had suffered from disability "secondary to [MS] complications"; that when

he had arrived home from service in 1972 he had had trouble holding hand tools, as they would freeze in his cramped fingers; that he was considered clumsy because he was always tripping over things; that he had noticed numbness of his hands and feet since 1976; and that he had had blurring of the vision intermittently since 1978. R. at 104–05. Dr. Frank also stated that the veteran had had urinary problems and "[a] diagnosis of prostatitis was made but patient did not have prostatitis". R. at 105. The examiner diagnosed: "Euphoric Personality in service secondary to multiple sclerosis[; and] multiple sclerosis—early symptom of [MS]—euphoria in service[,] ([m]any stress symptoms between 1975 and 1976) spasticity of hands unable to release tools from hands while working as sheet metal worker, clumsiness, tripping in walking, frequent bladder infections, visual disturbances, impotence (1978)." R. at 106.

In an April 1989 decision, the RO concluded that there was no new and material evidence to reopen the MS service-connection claim finally denied by the BVA in 1984. R. at 124, 132. On August 29, 1989, after filing an appeal to the BVA in July 1989 (R. at 133), the veteran testified under oath before the RO, asserting that the symptoms manifest in service and within the seven-year presumption period demonstrated that he had then had MS. R. at 134–148. He stated that he had fallen for no apparent reason in service and broken his ankle (R. at 136); that he had had a 104–degree fever in service (*ibid.*); and that shortly after service he had begun to experience intermittent blurred vision, spasticity in his hands causing tools to stick in his hands or causing him to drop them, problems with urinary retention, and problems with his gait, often causing him to fall down (R. at 136–37).

At the time of his hearing, the veteran submitted a July 3, 1989, neurological evaluation by Dr. Iris Fletcher Norstrand, Assistant Chief of Neurological Services at the Brooklyn VAMC. R. at 149–51. The veteran stated that Dr. Norstrand had treated the veteran since 1980. R. at 135. In her evaluation, Dr. Norstrand recounted

the reported history of the veteran's symptomatology and diagnosis, and concluded:

> There is no doubt but that this patient has had [MS] since discharge from service in 1972, and perhaps even during service because of his euphoric state during active combat. The weakness and spasticity of both hands and unsteady gait in 1972, urinary difficulties, with first urinary urgency and frequency in 1975, followed by urinary retention in 1977, parasthesias of hands and feet in 1976, loss of potentia and intermittent blurring of vision since 1978, and progressive course, with obvious exacerbations and remissions, point clearly to multiple sclerosis. This diagnosis has been confirmed by a positive CAT and MRI scan.

R. at 151.

In a January 24, 1990, decision, the hearing officer concluded that the evidence did not warrant any change in the prior denial of service connection for MS. R. at 162. The RO subsequently received several medical records reflecting private medical treatment for urinary problems, among other things, between 1976 and 1980. R. at 167–97. The RO again denied the claim in May 31, 1990, stating: "Service connection for multiple sclerosis remains denied as no new evidence has been furnished to establish the onset of the condition in service or to a compensable degree of 10% [or] more within 7 years of discharge." R. at 211. In statements in support of the veteran's appeal, the veteran's representative stated that the issue on appeal was "Entitlement to service-connection for multiple sclerosis". R. at 212, 220.

In its April 19, 1991, decision here on appeal, the BVA concluded: "The evidence submitted since the prior [BVA] decision, *while new and material,* does not establish a new factual basis warranting a grant of service connection for multiple sclerosis." *Bernard,* BVA 91–28831, at 6 (emphasis added). The Board did not specifically discuss the psychiatric and neurological evaluations by Drs. Frank and Norstrand, but it stated:

In the course of evaluations conducted in 1988 and 1989, the veteran gave a history of symptoms indicative of multiple sclerosis while he was on active duty and during the first few years following his discharge. However, this history is at variance with the service medical records, which are entirely negative, and the recently submitted private medical records documenting treatment for various disorders during the seven years following the veteran's discharge from active duty do not document any findings indicative of [MS] within the applicable time period.

*Ibid.* It further stated: "We also note that the urinary difficulties which the veteran has considered a symptom of [MS] can be attributed to other disorders such as prostatitis and urinary tract infections as well as the use of diuretics for the treatment of hypertension." *Ibid.*

The appellant's primary contention on appeal to this Court, in his brief, oral argument, and post-oral-argument memorandum, is that the BVA erred in adjudicating, in the first instance, the issue of his entitlement to service-connected disability compensation for MS. Rather, he asserts that the Board may exercise only appellate jurisdiction to decide issues that had previously been decided by the RO, and that, because the RO had concluded that there was no new and material evidence to reopen his MS claim, the Board's inquiry on appeal should have been limited to determining whether he had submitted new and material evidence. He contends that, once the Board determined, contrary to the RO, that new and material evidence had been presented, it was required to remand the matter to the RO with instructions to readjudicate the claim on the basis of all the evidence, both old and new. The response of the Secretary of Veterans Affairs (Secretary) is set forth under part II.B., below.

## II. ANALYSIS

### A. *New and Material Evidence*

■ Pursuant to 38 U.S.C.A. § 5108 (West 1991), the Secretary must reopen a previously and finally disallowed claim when "new and material evidence" is presented or secured with respect to that claim. *See* 38 U.S.C.A. § 7104(b) (West 1991). On claims to reopen previously and finally disallowed claims, the RO or BVA must conduct a two-step analysis. *See Manio v. Derwinski*, 1 Vet.App. 140, 145 (1991). First, it must determine whether the evidence presented or secured since the prior final disallowance of the claim is "new and material". If it is, the RO or Board must then review the new evidence "in the context of" the old to determine whether the prior disposition of the claim should be altered. *See Jones (McArthur) v. Derwinski*, 1 Vet.App. 210, 215 (1991). "New" evidence is evidence which is not "merely cumulative" of other evidence in the record. *Colvin v. Derwinski*, 1 Vet. App. 171, 174 (1991). Evidence is "material" when it is relevant to and probative of the issue at hand and there is "a reasonable possibility that the new evidence, when viewed in the context of all the evidence, both new and old, would change the outcome." *Colvin, supra.* In determining whether evidence is new and material, "the credibility of the evidence must be presumed." *Justus v. Principi*, 3 Vet.App. 510, 513 (1992). The determination whether evidence is "new and material" is a conclusion of law, which the Court reviews de novo under 38 U.S.C.A. § 7261(a)(1) (West 1991). *See Masors v. Derwinski*, 2 Vet.App. 181, 185 (1992); *Jones*, 1 Vet.App. at 213; *Colvin, supra.*

■ The Court holds, as did the BVA, that the veteran in this case did submit new and material evidence to reopen his claim for service connection for MS. The evidence submitted since the prior final BVA denial in January 1984 includes the following: (1) a February 1988 report from a VA psychiatrist diagnosing the veteran with MS which the psychiatrist found had first been manifested by euphoria in service and later by symptoms in 1975 and 1976 (within the seven-year presumption period) (R. at 106); and (2) a July 1989 report from a VA neurologist that there is "no doubt" that the veteran has had MS since his separation from service in 1972

(R. at 151). This medical evidence is not cumulative of other evidence in the record, and it is relevant to and probative of the issue of whether MS was present in service or within the seven-year presumption period. Presuming the credibility of the two doctors' statements, they create a reasonable possibility of changing the outcome of the prior denial. Therefore, because the veteran submitted new and material evidence, he was entitled to have his claim readjudicated on the basis of all the evidence of record, both old and new. *See Jones, supra; Colvin, supra; Manio, supra.*

### B. *BVA's Jurisdiction to Adjudicate the Merits of the Veteran's Claim*

We next address the appellant's contention that the Board, upon determining that there was new and material evidence requiring the claim to be reopened and readjudicated on the basis of all the evidence, was required to remand the claim to the RO for such readjudication in the first instance. The appellant asserts that, because the RO had not adjudicated the merits of the claim, but had concluded only that there was no new and material evidence to reopen, the Board thus lacked jurisdiction to adjudicate the merits on appeal, because there was no RO decision on the merits to appeal.

The Secretary, in his post-oral-argument memorandum, counters that "the general issue presented in the [a]ppellant's claim, and over which the BVA had jurisdiction, was whether the [a]ppellant was entitled to service connection for [MS]." Br. at 3–4. He further contends that "the Board may consider arguments, as well as subissues, raised for the first time during the appeal and not considered by the agency of original jurisdiction 'if the claimant will not be prejudiced by its [the BVA's] actions.'" Br. at 3 (quoting VA O.G.C. (July 24, 1992)). The Secretary states that the question whether there was new and material evidence to reopen the claim and the question whether, upon such reopening, the veteran was entitled to benefits, are two "subissues" of the single claim over which the BVA had appellate jurisdiction and

that, hence, the BVA could adjudicate the latter question in the first instance as long as the veteran was not prejudiced thereby. The Secretary asserts that there was no such prejudice in this case.

■ Under the governing statutes and regulations, the Board's jurisdiction is limited to deciding questions in "appeals" of decisions by the Secretary or his delegates. The Board's jurisdictional statute provides:

### § 7104. Jurisdiction of the Board

(a) All *questions in a matter* which under section [511(a)] of this title is subject to decision by the Secretary shall be subject to one *review on appeal* to the Secretary. Final decisions on *such appeals* shall be made by the Board. The Board shall decide any such appeal only after affording the claimant an opportunity for a hearing. Decisions of the Board shall be based on the entire record in the proceeding and upon consideration of all evidence and material of record and applicable provisions of law and regulation.

38 U.S.C.A. § 7104(a) (West 1991) (emphasis added); *see* 38 C.F.R. § 20.101 (1992) (to substantially the same effect). Furthermore, 38 U.S.C.A. § 7105 (West 1991) establishes a series of very specific, sequential, procedural steps that must be carried out by a claimant and the RO or other "agency of original jurisdiction" (AOJ) (*see Machado v. Derwinski*, 928 F.2d 389, 391 (Fed.Cir.1991)) before a claimant may secure "appellate review" by the BVA. Subsection (a) of that section establishes the basic framework for the appellate process, as follows: "Appellate review will be initiated by a notice of disagreement [(NOD)] and completed by a substantive appeal after a statement of the case is furnished as prescribed in this section. Each appellant will be accorded hearing and representation rights pursuant to the provisions of this chapter and regulations of the Secretary." 38 U.S.C.A. § 7105(a) (West 1991); *see* 38 C.F.R. § 20.200 (1992) (to substantially the same effect).

In order to initiate review of an adverse AOJ decision, a claimant must file an NOD in writing with the AOJ within one year

after "the date of mailing of notice of the result of initial review or determination". 38 U.S.C.A. § 7105(b)(1) (West 1991). If the claimant fails to file an NOD within that time, "the action or determination shall become final and the claim will not thereafter be reopened or allowed, except as may otherwise be provided by regulations not inconsistent with [title 38, U.S.Code]". 38 U.S.C.A. § 7105(c) (West 1991). If the claimant does file a timely NOD (or one accepted by the Secretary pursuant to his regulatory exception authority, *see Rowell v. Principi*, 4 Vet.App. 9, 14 (1993)), then the AOJ is required to "take such development or review action as it deems proper". 38 U.S.C.A. § 7105(d)(1) (West 1991). If such action does not resolve the disagreement, the AOJ must prepare a Statement of the Case (SOC) which includes "[a] summary of the evidence in the case pertinent to the issue or issues with which disagreement has been expressed"; "[a] citation to pertinent laws and regulations and a discussion of how such laws and regulations affect the agency's decision"; and "[t]he decision on each issue and a summary of the reasons for such decision." *Ibid.* In order to "complete" or "perfect" the appeal, the claimant must then file a "formal appeal" (called a "Substantive Appeal" in VA regulations, 38 C.F.R. §§ 20.200, 20.202 (1992)) within sixty days after the date on which the SOC is mailed. 38 U.S.C.A. § 7105(d)(3) (West 1991); *see Rowell*, 4 Vet.App. at 16. This appeal to the BVA, filed on a VA Form 1–9 and hereinafter referred to as a "1–9 appeal", "should set out specific allegations of error of fact or law ... related to specific items in the statement of the case", and "[t]he benefits sought on appeal must be clearly identified". *Ibid.*

█ It is thus clear that the Board's jurisdiction is limited to deciding questions in "appeals" of "a matter which under section [511(a)] of this title is subject to decision by the Secretary" and which has been the subject of a decision by an AOJ. Therefore, the question whether the Board in this case lacked *jurisdiction* to adjudicate the merits of the veteran's claim for service-connected disability compensation

turns upon whether that determination itself involves a "matter", as that term is used in section 7104(a), separate from the determination of whether new and material evidence to reopen had been submitted, or, alternatively, whether those two determinations were merely "questions" in a single "matter". If the two are separate "matters", then the Board would lack jurisdiction to address the merits of the veteran's benefits claim because the RO had not rendered a decision on that matter that could have been appealed to the Board. However, if they are merely different questions within a single "matter", then the Board would have jurisdiction to adjudicate the merits of the claim because the veteran had properly appealed to the Board from an RO decision on that "matter".

█ Review of the governing statutory provisions in 38 U.S.C.A. §§ 7104(a) and 511(a) in the context of the overall statutory scheme in title 38, U.S.Code, governing veterans' benefits claims compels the conclusion that the question whether a claimant has submitted new and material evidence to reopen a claim and the question whether, upon such reopening, a claimant is entitled to VA benefits, are questions relating to a single "matter" for purposes of the Board's jurisdiction under 38 U.S.C.A. § 7104(a). As noted above, section 7104(a) provides that the Board has jurisdiction to decide "all questions" in an appeal of "a matter which under section [511(a)] of this title is subject to decision by the Secretary". 38 U.S.C.A. § 7104(a) (West 1991). Section 511(a) provides, in relevant part: "The Secretary shall decide all questions of law and fact necessary to a decision by the Secretary under a law that affects the provision of benefits by the Secretary to veterans or the dependents or survivors of veterans."

As noted above, in order to establish entitlement to VA benefits in claims for reopening of a claim which has been the subject of a prior final denial by the AOJ or the Board, the claimant must satisfy both parts of the two-step *Manio* test—first, the evidence presented or secured since the prior final disallowance of the claim must

be "new and material"; and, if it is, review of the new evidence "in the context of" the old must show that the prior disposition of the claim should be altered. *See* 38 U.S.C.A. § 5108; *Jones, supra; Colvin, supra; Manio, supra.* The Secretary need not decide both questions in all cases, because an adverse conclusion on either question will be determinative of the claimant's non-entitlement to benefits. *See Kehoskie v. Derwinski,* 2 Vet.App. 31, 34 (1991). It is clear, however, that both questions relate to a single claim of entitlement to VA benefits and that both, therefore, are components of a single "decision by the Secretary under a law that affects the provision of benefits by the Secretary", as referred to in section 511(a).

It is axiomatic that claimants do not submit claims merely for the reopening of their previously and finally denied claims. Rather, they submit claims for VA benefits, which, in cases of previously and finally denied claims, implicate both the question of whether there is new and material evidence to reopen the claim and the question of whether, upon such reopening, the claimant is entitled to the requested benefits. (In the present case, for example, after he had initiated and perfected his appeal by filing an NOD and a 1-9 appeal, the veteran, in his August 1989 hearing and in two statements submitted by his representative to the BVA, asserted "entitlement to service-connection for multiple sclerosis" (R. at 135, 212, 220), rather than simply entitlement to reopening of his previously and finally denied claim.) Although the two questions are distinct, they are components of a single claim for benefits "under a law that affects the provision of benefits by the Secretary". In the present case, the "law that affects the provision of benefits" is 38 U.S.C.A. § 1110 (West 1991), requiring the Secretary to pay disability compensation to any veteran who is disabled as the result of a disease or injury incurred or aggravated in the line of duty in the active military, naval, or air service. The "matter" which was the subject of the RO's decision and, consequently, over which the BVA has jurisdiction under 38 U.S.C.A. § 7104(a), is the veteran's claim of entitlement to VA benefits for MS under section 1110.

▇▇▇ The fact that the RO decided the veteran's claim upon a finding that the veteran had not presented new and material evidence to reopen the claim does not thereby limit the scope of the BVA's review of "the matter" on appeal. Section 7104(a) expressly provides that the Board has jurisdiction to decide *"[a]ll questions in a matter"* properly before it on appeal from an AOJ decision. 38 U.S.C.A. § 7104(a) (West 1991) (emphasis added). Furthermore, that section provides: "Decisions of the Board shall be based on the entire record in the proceeding and upon consideration of all evidence and material of record and applicable provisions of law and regulation." *Ibid.* Therefore, the Court having held that the Board properly had appellate jurisdiction to review the veteran's claim of entitlement to benefits under section 1110, it follows that the Board was authorized to decide all questions presented on the record before it that were necessary to its decision on that matter. The Board's inquiry was, therefore, not limited to the specific questions actually decided by the RO. *See Douglas v. Derwinski,* 2 Vet.App. 435, 438–39 (1992) (en banc) (BVA required to address issues reasonably raised by liberal reading of all documents or oral testimony submitted prior to the BVA decision); *EF v. Derwinski,* 1 Vet.App. 324, 326 (1991); *Myers v. Derwinski,* 1 Vet.App. 127, 129 (1991).

### C. BVA Adjudication of Questions Not Decided By the AOJ

The Court's holding that the Board was not jurisdictionally barred from adjudicating the merits of the veteran's claim for service connection for MS does not end the matter. As partially noted above, several statutory and regulatory provisions establish extensive procedural requirements to ensure a claimant's rights to full and fair assistance and adjudication in the VA claims adjudication process. *See also, e.g.,* 38 U.S.C.A. §§ 5104 (Secretary must give claimant and any representative of claimant notice of AOJ decision and statement of

evidence considered and reasons for decision), 5107(a) (VA must assist claimant in developing facts pertinent to the claim), 7104(a) (claimant has right to a hearing before BVA decision), 7105(d)(1) (VA must provide SOC setting forth evidence considered, applicable provisions of law and regulation, and reasons for decision on each issue) (West 1991); 38 C.F.R. §§ 3.103(a) ("Every claimant has the right to written notice of the decision made on his or her claim, the right to a hearing, and the right of representation. Proceedings before VA are ex parte in nature, and it is the obligation of VA to assist a claimant in developing the facts pertinent to the claim and to render a decision which grants every benefit that can be supported in law while protecting the interests of the government."), 3.103(c)(1) (claimant entitled to hearing "at any time on any issue involved in a claim"), 3.103(c)(2), (d) (claimant entitled "to produce witnesses and ... introduce ... any available evidence ... and any arguments", and any such evidence or argument is "to be included in the record"; VA hearing personnel must "suggest the submission of evidence which the claimant may have overlooked ... of advantage to the claimant's position"), 19.9 (BVA to remand to AOJ when necessary for further development or to cure procedural defect), 19.25 (notification of rights), 19.29 (right to SOC "complete enough to allow the appellant to present written and/or oral arguments before" BVA), 19.131 (right to supplemental SOC when original SOC is insufficient for any reason) (1992).

In a case such as this, the Board's action on appeal in proceeding to decide a question that the AOJ had not decided raises the possibility that a claimant will be prejudiced by not having been afforded the full benefits of these procedural safeguards; for example, the original SOC may have been insufficient to inform the claimant of the governing law and regulation as to any such question that the AOJ had not decided. Therefore, the claimant may not have received sufficient notice of the need to address that issue in his or her submissions, arguments, and testimony on appeal.

The VA General Counsel has addressed this potential for prejudice in a recent precedent opinion concerning the inquiry the BVA must conduct when addressing questions that were not addressed by the AOJ in the decision being appealed. The General Counsel stated:

16. Before considering subissues and arguments, or applying statutes, regulations, or [Court of Veterans Appeals (Court)] analyses which had not been considered by the AOJ, BVA must first determine whether the claimant will be prejudiced by its actions. BVA may make findings favorable to an appellant on subissues or arguments relating to a claim without referring the matter to the AOJ, since such action is not barred by statutes or regulations and does not prejudice the interests of the appellant. Similarly, if a statute, regulation, or [Court] analysis which was not considered by the AOJ provides a basis for allowance of the benefit sought on appeal, no statute or regulation bars BVA from granting the benefits sought, without referring the matter to the AOJ. Also, if the appellant has raised an argument or asserted the applicability of a law or [Court] analysis, it is unlikely that the appellant could be prejudiced if the Board proceeds to decision on the matter raised. An exception would exist when additional factual development is required to assess the validity of the appellant's assertion.

17. Adverse BVA findings on matters not considered by the AOJ, or the denial of the benefit sought on appeal based on statutes, regulations, or [Court] analyses which were not considered by the AOJ, raise an issue concerning whether the appellant's procedural rights to notice, 38 C.F.R. § 3.103(b), to a hearing, 38 C.F.R. § 3.103(c), and to submit evidence in support of a claim, 38 C.F.R. § 3.103(d), have been abridged....

18. In O.G.C. Prec. 6–92 [(Mar. 6, 1992)], we stated that, in determining whether to consider matters which have not been addressed in the statement of the case, BVA should consider such factors as whether the appellant has been

fully apprised of the applicable laws and regulations and whether the appellant or the appellant's representative has presented argument relative to such matters....

19. Whether BVA must remand an appeal to the AOJ to cure a deficiency in the statement of the case relating to the summary of evidence, citation of statutes and regulations, or the summary of the reasons for the AOJ's decision will depend on the circumstances of the individual case....

20. ... We conclude that if BVA determines that the omission from the statement of the case did not prejudice the claimant or violate VA's statutory duty to assist the claimant, BVA could properly render a decision on the appeal.... If BVA determines that the claimant has been prejudiced by a deficiency in the statement of the case, BVA should remand the case to the AOJ, pursuant to 38 C.F.R. § 19.9, specifying the action to be taken.

VA O.G.C. Prec. 16–92, at 7–9.

■■■ In view of the above analysis, the Court holds that, when, as here, the Board addresses in its decision a question that had not been addressed by the RO, it must consider whether the claimant has been given adequate notice of the need to submit evidence or argument on that question and an opportunity to submit such evidence and argument and to address that question at a hearing, and, if not, whether the claimant has been prejudiced thereby. As with all of its decisions, a BVA decision that a claimant will not be prejudiced by its deciding a question or questions not addressed by the AOJ must be supported by an adequate statement of reasons or bases. See 38 U.S.C.A. § 7104(d)(1) (West 1991); Gilbert v. Derwinski, 1 Vet.App. 49, 56–57 (1990). Moreover, because the Board is bound in its decisions by the precedent opinions of the VA General Counsel (38 U.S.C.A. § 7104(c); 38 C.F.R. § 19.5 (1992), except to the extent inconsistent with binding judicial decisions), when, as here, the Board decides a question that was not decided by the AOJ, it must apply O.G.C. 16–92 and explain its conclusion in terms thereof. Although O.G.C. 16–92 was issued after the April 1991 BVA decision currently here on appeal, the Court holds that remand is required for the Board to apply it. Cf. Karnas v. Derwinski, 1 Vet. App. 308, 312–13 (1991) ("where a law or regulation changes after a claim has been filed or reopened but before the administrative or judicial appeal process has been concluded, the version most favorable to appellant should and we so hold will be applied unless Congress provided otherwise or permitted the Secretary ... to do otherwise and the Secretary did so").

■■■ In the present case, the Board in its April 1991 decision currently here on appeal did not consider and discuss whether the veteran would be prejudiced by its action in adjudicating the merits of his claim for MS service connection even though the prior RO decisions and the SOC had addressed only the question of whether he had submitted new and material evidence to reopen his previously and finally denied claim. Because the Board did not consider and discuss this issue, the Court will not adjudicate it in the first instance. See Archer v. Principi, 3 Vet.App. 433, 436 (1992) (Court will not consider issues not considered by the Board); Branham v. Derwinski, 1 Vet.App. 93, 94 (1990) (issue not raised to BVA is generally "not properly before the Court"); Gilbert, supra (BVA's reasons or bases must be "clear enough to permit effective judicial review"); cf. Russell v. Principi, 3 Vet.App. 310, 315 (1992) (en banc) (Court may not adjudicate, in the first instance, a claim of "clear and unmistakable error" in a prior final decision, but will remand for BVA to adjudicate the issue). Therefore, remand is required for the Board to consider and discuss, in the context of O.G.C. 16–92, whether the veteran had been given adequate notice of the need to present evidence and argument on the merits of his claim for service connection and an adequate opportunity to appear at a hearing and to present evidence and argument with respect to that question, and, if not, whether the claimant has been prejudiced thereby.

### D. Reasons or Bases for BVA's Medical Conclusions

The Court holds that there is a further deficiency which must be corrected in the readjudication pursuant to this remand. Pursuant to 38 U.S.C.A. § 7104(d)(1), the Board is required to provide an adequate statement of the reasons or bases for its findings and conclusions. *See Gilbert*, 1 Vet.App. at 56–57. When such findings and conclusions are medical in nature, the Board may not rely on its own unsubstantiated medical conclusions, but "may consider only independent medical evidence to support [its] findings." *Colvin*, 1 Vet.App. at 175; *see Paller v. Principi*, 3 Vet.App. 535, 538 (1992). "If the medical evidence of record is insufficient, or, in the opinion of the BVA, of doubtful weight or credibility, the BVA is always free to supplement the record by seeking an advisory opinion, ordering a medical examination or [quoting] recognized medical treatises in its decisions that clearly support its ultimate conclusions." *Colvin, supra; Hatlestad v. Derwinski*, 3 Vet.App. 213, 217 (1992).

In the April 1991 decision here on appeal, the Board concluded "that the urinary difficulties which the veteran has considered a symptom of [MS] can be attributed to other disorders such as prostatitis and urinary tract infections as well as the use of diuretics for the treatment of hypertension." *Bernard*, BVA 91–28831, at 6. Although this statement is phrased in terms of possibilities ("can be attributed"), it is clear that it represents a conclusion by the Board that the evidence of the veteran's urinary difficulties does not demonstrate the onset of MS. It is equally clear that such a conclusion is medical in nature. The Board cited no medical evidence to support this conclusion. Moreover, that conclusion directly conflicts with the medical opinion of a VA neurologist that the veteran's "urinary difficulties ... point[ed] clearly to [MS]" (R. at 151) as well as a similar implication from the VA February 1988 examination report (R. at 104–05). Therefore, the Board's contrary and unsupported medical conclusion cannot stand.

### III. CONCLUSION

Based on the foregoing analysis, the Court vacates the April 19, 1991, BVA decision and remands the matter to the Board for prompt readjudication consistent with this opinion on the basis of all evidence of record and applicable law and regulation. *See* 38 U.S.C.A. § 7104(a); *Fletcher v. Derwinski*, 1 Vet.App. 394, 397 (1991). On remand, the veteran "will be free to submit additional evidence and argument." *Quarles v. Derwinski*, 3 Vet.App. 129, 141 (1992).

VACATED AND REMANDED.