Citation Nr: 1008500 
Decision Date: 03/08/10 Archive Date: 03/17/10

DOCKET NO. 08-17 554 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in St. 
Petersburg, Florida


THE ISSUES

1. Entitlement to service connection for bilateral hearing 
loss.

2. Entitlement to service connection for a left eye 
disorder.


REPRESENTATION

Veteran represented by: The American Legion


WITNESSES AT HEARING ON APPEAL

Veteran & Spouse


ATTORNEY FOR THE BOARD

J. Smith, Counsel
INTRODUCTION

The Veteran served on active duty from April 1954 to March 
1957.
 
The Veteran's claim comes before the Board of Veterans' 
Appeals (Board) on appeal from a September 2006 rating 
decision of the Department of Veterans Affairs' (VA) Regional 
Office (RO) in St. Petersburg, Florida, that denied the 
benefits sought on appeal. 
 
The Board notes that although additional medical evidence was 
submitted after the last supplemental statement of the case, 
in a December 2009 document, the Veteran waived his right to 
have this evidence reviewed in the first instance by the RO.

The issue of entitlement to service connection for a left eye 
disorder is addressed in the REMAND portion of the decision 
below and is REMANDED to the RO via the Appeals Management 
Center (AMC), in Washington, DC.


FINDING OF FACT

The Veteran's bilateral hearing loss has been etiologically 
related to service.


CONCLUSION OF LAW

The criteria for service connection for bilateral hearing 
loss have been met. 
38 U.S.C.A. §§ 1131, 5103, 5103A, 5107 (West 2002 & Supp. 
2009); 
38 C.F.R. §§ 3.102, 3.159, 3.303, 3.304 (2009).


REASONS AND BASES FOR FINDING AND CONCLUSION

On November 9, 2000, the President signed into law the 
Veterans Claims Assistance Act of 2000 (VCAA), 38 U.S.C.A. § 
5100 et seq; 38 C.F.R. §§ 3.102, 3.156(a), 3.159, 3.326(a) 
(2009). This law eliminated the concept of a well-grounded 
claim, redefined the obligations of VA with respect to the 
duty to assist, and imposed on VA certain notification 
requirements. Without deciding whether the notice and 
development requirements of VCAA have been satisfied in the 
present case, it is the Board's conclusion that the new law 
does not preclude the Board from adjudicating the Veteran's 
claim for service connection. This is so because the Board 
is taking action favorable to the Veteran by granting service 
connection for bilateral hearing loss; a decision at this 
point poses no risk of prejudice to the Veteran. See, e.g., 
Bernard v. Brown, 4 Vet. App. 384 (1993); VAOPGCPREC 16-92, 
57 Fed. Reg. 49,747 (1992).
 
To establish service connection, the record must contain (1) 
medical evidence of a current disability, (2) medical 
evidence, or in certain circumstances, lay testimony, of in-
service incurrence or aggravation of an injury or disease, 
and (3) medical evidence of a nexus between the current 
disability and the in-service disease or injury. In other 
words, entitlement to service connection for a particular 
disability requires evidence of the existence of a current 
disability and evidence that the disability resulted from a 
disease or injury incurred in or aggravated during service. 

Here, the first element for service connection has been met. 
Audiometric data from January 2009, for example, establishes 
a diagnosis of bilateral hearing loss for VA purposes.
 
Further, the evidence here supports that the Veteran's 
hearing loss was incurred in and is related to service. In 
this case, while there are service treatment notes of record, 
a March 2001 statement from the National Personnel Records 
Center indicates that apparently some records were destroyed 
in the 1973 fire at the National Personnel Records Center. 
Given the absence of such records, the Board has a heightened 
duty to explain its findings and conclusions and to consider 
carefully the benefit-of-the-doubt rule. See O'Hare v. 
Derwinski, 1 Vet. App. 365, 367 (1991) (the BVA has a 
heightened duty in a case where the service treatment records 
are presumed destroyed). 

In this case, the Board finds the lay evidence of record to 
be probative on the issue of in-service incurrence. The 
Veteran has stated that he was exposed to loud noise, 
including tank firing, rifle firing, and grenade firing, 
while in the infantry as a medical aidman ro filed medic. At 
his December 2009 personal hearing he testified that he 
followed battalions as they practiced combat maneuvers and 
was exposed to excessive noise. The Board finds the Veteran 
is both credible and competent to report his symptoms of 
hearing loss from this time. The Court of Appeals for 
Veterans Claims has recently held that lay evidence can be 
competent and sufficient to establish a diagnosis of a 
condition when a layperson is competent to identify the 
medical condition, or reporting a contemporaneous medical 
diagnosis, or the lay testimony describing symptoms at the 
time supports a later diagnosis by a medical professional. 
Jandreau v. Nicholson, 492 F.3d 1372 (Fed. Cir. 2007). In 
addition, the Veteran has submitted a December 2009 lay 
statement of C.F. In the statement, C.F. states that he has 
been the Veteran's friend and neighbor since childhood, that 
they both entered different branches of the military at 
around the same time, and that upon discharge, they opened a 
private detective and patrol business which they operated 
together for many years. C.F. states that in 1957, 
immediately after discharge and upon opening their business, 
the Veteran's hearing loss became quite obvious to him during 
the operation of their company. He stated that the Veteran 
was often unable to hear the responses of witnesses and would 
ask them to repeat themselves, when the responses were 
perfectly clear to C.F. In addition to the Veteran's own 
statements, the Board finds this evidence persuasive on the 
in-service incurrence of the Veteran's hearing loss. 

The Board is further persuaded by the positive nexus opinion 
of record. In a November 2000 statement of Harold M. 
Silberman, M.D., Dr. Silberman stated, "[h]e was in the U.S. 
Army from March 1954 to April 1957 in the tank corp. He was 
exposed to heavy weapon firing and noted changes in his 
hearing commencing a few years after he left service. It is 
most probable that his hearing los was related to noise 
trauma from his military service." The Board notes that a 
medical opinion formed on the basis of the Veteran's reported 
medical history cannot be rejected without the Board first 
finding that the Veteran's allegations are not credible. 
Kowalski v. Nicholson, 19 Vet. App. 171 (2005) (holding that 
Board may not disregard a medical nexus opinion solely on the 
rationale that the medical opinion was based on an 
"uncorroborated" history given by the Veteran of in-service 
acoustic trauma where the history has not been found by the 
Board to be inaccurate; the case involved a Korean War 
Veteran and 1973 fire destroyed records); Coburn v. 
Nicholson, 19 Vet. App. 427, 432 (2005); Buchanan v. 
Nicholson, 451 F.3d 1331 (Fed. Cir. 2006) (holding the Board 
cannot determine that a Veteran's statements lack credibility 
merely based on a lack of such documentation in the service 
treatment records);. As discussed above, the Board finds no 
reason to doubt the credibility of the statements made by the 
Veteran or his friend. 

Moreover, the file contains no nexus evidence to the contrary 
of Dr. Silberman's finding. As such, and given all of the 
above evidence, the Board finds the evidence supports that 
the Veteran's current bilateral hearing loss was incurred in 
service and is related to service. Accordingly, the claim is 
granted. 


ORDER

Service connection for bilateral hearing loss is granted.


REMAND

The Veteran in this case is also seeking service connection 
for a left eye disorder. At the outset, the Board notes that 
at the December 2009 hearing, the Veteran testified to 
receiving private medical treatment for his condition in as 
early as the late 1950s. While these records may be 
unavailable, the Veteran should at least be afforded the 
opportunity to submit any information necessary for the RO to 
request them. 38 C.F.R. § 3.159(c)(1) defines reasonable 
efforts in obtaining records outside the custody of the 
federal government as "an initial request for the records, 
and, if the records are not received, at least one follow-up 
request." 

A remand is additionally required in order to afford the 
Veteran a VA examination to determine the nature and etiology 
of his disability. In the case of a disability compensation 
claim, VA's duty to assist includes providing a medical 
examination or obtaining a medical opinion when necessary to 
make a decision on the claim. 38 U.S.C.A. § 5103A(d) (West 
2002 & Supp. 2009); 38 C.F.R. § 3.159(c)(4) (2009). Such an 
examination or opinion is necessary to make a decision on a 
claim if all of the lay and medical evidence of record (1) 
contains competent evidence that the claimant has a current 
disability, or persistent or recurrent symptoms of 
disability; and (2) indicates that the disability or symptoms 
may be associated with the claimant's active military, naval, 
or air service; but (3) does not contain sufficient medical 
evidence for VA to make a decision on the claim. Id.

Here, the Veteran's service treatment records confirm the 
injury the Veteran contends occurred to his eye while on 
active duty. The Veteran states that during basic training 
he was struck with a tree branch in the left eye while 
practicing maneuvers at night. He states that proper night 
vision protective gear was not used at that time. He 
contends that ever since this injury, he has suffered from 
blurry vision in the eye. The Veteran's eye injury is 
documented in an illegibly dated service treatment record. 
Complaints of blurry vision are documented in separate 
service treatment records of May 1954. Scars in the left eye 
were noted in a service treatment record of January 1957. 
The Veteran recently submitted a private treatment record 
from his eye doctor, Warren K. Gross, O.D., but the diagnosis 
is unclear. A VA examination is needed to clarify the 
Veteran's exact diagnosis and to determine whether there is 
any relationship between the current problem and the in-
service accident. 

Last, at the hearing, the Veteran requested a copy of his 
December 2009 hearing transcript. Accordingly, while the case 
is in remand status, the requested copy should be furnished 
to the Veteran and his representative.

Accordingly, the case is REMANDED for the following action:

1. Contact the Veteran and request that 
he provide any authorization forms 
necessary to allow the RO to obtain 
private treatment records for any 
treatment he has received since discharge 
related to his eye. Thereafter, the RO 
should attempt to obtain those records. 
Do not associate duplicate records with 
the file.

2. Afford the Veteran a VA eye 
examination with an appropriate examiner 
to ascertain the nature and etiology of 
his left eye disorder. Any and all 
indicated evaluations, studies, and tests 
deemed necessary by the examiner should 
be accomplished. The examiner is 
requested to review all pertinent records 
associated with the claims file, 
particularly the service treatment record 
documenting the Veteran's eye injury and 
subsequent notes of May 1954 and January 
1957, and offer comments and an opinion 
addressing whether it is more likely than 
not (i.e., probability greater than 50 
percent), at least as likely as not 
(i.e., probability of 50 percent), or 
less likely than not (i.e., probability 
less than 50 percent), that the Veteran's 
current eye disorder had its onset during 
service or is in any other way causally 
related to his active service.
 
All opinions should be supported by a 
clear rationale, and a discussion of the 
facts and medical principles involved 
would be of considerable assistance to 
the Board. Copies of all pertinent 
records in the Veteran's claims file, or 
in the alternative, the claims file 
itself, must be made available to the 
examiner. 

The Veteran is hereby notified that it is 
his responsibility to report for the 
examination scheduled in connection with 
this REMAND and to cooperate in the 
development of his case. The consequences 
of failure to report for a VA examination 
without good cause may include denial of 
his claim. 38 C.F.R. §§ 3.158, 3.655 
(2009).
3. Provide the Veteran and his 
representative with a copy of the 
transcript of the December 2009 travel 
Board hearing. 

After all of the above actions have been completed, 
readjudicate the Veteran's claim. If the claim remains 
denied, issue to the Veteran a supplemental statement of the 
case, and afford the appropriate period of time within which 
to respond thereto. 
 
The Veteran has the right to submit additional evidence and 
argument on the matter or matters the Board has remanded. 
Kutscherousky v. West, 12 Vet. App. 369 (1999).

This claim must be afforded expeditious treatment. The law 
requires that all claims that are remanded by the Board of 
Veterans' Appeals or by the United States Court of Appeals 
for Veterans Claims for additional development or other 
appropriate action must be handled in an expeditious manner. 
See 38 U.S.C.A. §§ 5109B, 7112 (West 2002 & Supp. 2009).



______________________________________________
MARJORIE A. AUER
Veterans Law Judge, Board of Veterans' Appeals



 Department of Veterans Affairs