Citation Nr: 1528211 
Decision Date: 06/30/15 Archive Date: 07/09/15

DOCKET NO. 05-32 385 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in St. Petersburg, Florida


THE ISSUES

1. Entitlement to a disability rating in excess of 40 percent prior to February 16, 2010, for a lumbar spine disability, to include whether a separate disability rating for neurological impairment is warranted.

2. Entitlement to a disability rating in excess of 40 percent beginning April 1, 2010, for a lumbar spine disability, to include whether a separate disability rating for neurological impairment is warranted prior to February 11, 2013.

3. Entitlement to a total disability rating for compensation purposes based on individual unemployability.


REPRESENTATION

Veteran represented by: Disabled American Veterans


ATTORNEY FOR THE BOARD

Jessica O'Connell, Associate Counsel


INTRODUCTION

The Veteran served on active duty from April 1981 to August 1991. This matter comes properly before the Board of Veterans' Appeals (Board) on appeal from an April 2004 rating decision issued by the Department of Veterans Affairs (VA) Regional Office (RO) in St. Petersburg, Florida.

In an April 2014 decision, the Board increased the Veteran's disability rating for his service-connected lumbar spine disability from 20 percent to 40 percent disabling for the period covered by the claim prior to April 1, 2010, and denied the claim for a disability rating in excess of 40 percent, beginning April 1, 2010, to include whether a separate rating for neurological impairment was warranted at any time prior to February 11, 2013. The Veteran then appealed the issues to the United States Court of Appeals for Veterans Claims (Court).

In April 2015, the Veteran's representative and VA's General Counsel agreed to a Joint Motion for Partial Remand (Joint Motion). By an Order dated that same month, the Court remanded this case to the Board for compliance with the Joint Motion. The Joint Motion notes that the Board's decision with regard to its grant of an increased rating from 20 percent to 40 percent for the Veteran's lumbar spine disability prior to April 1, 2010, must not be vacated. See Medrano v. Nicholson, 21 Vet. App. 165, 170 (2007) ("The Court is not permitted to reverse findings of fact favorable to a claimant made by the Board pursuant to its statutory authority."). Significantly, following the Veteran's appeal of the April 2014 Board decision to the Court, a June 2014 rating decision granted a temporary 100 percent rating for a period of convalescence beginning February 16, 2010, and prior to April 1, 2010. As this action is more favorable to the Veteran than the 40 percent rating assigned in the April 2014 Board decision, the Board finds it is not in conflict with the Joint Motion's instructions.

ORDER TO VACATE

VA regulations provide that the Board may vacate an appellate decision at any time upon the request of the Veteran or his representative or on the Board's own motion when there has been a denial of due process. 38 C.F.R. § 20.904(a) (2014). Here, based on the Joint Motion, the Court remanded the Board's decision. Accordingly, in order to prevent prejudice to the Veteran, the April 2014 Board decision must be vacated in part, and a new decision will be entered as if part of the April 2014 decision by the Board had never been issued.


REMAND

With regard to the Veteran's claim for an increased rating for a lumbar spine disability, the Joint Motion indicated that the Board impermissibly considered evidence in the first instance without a waiver of RO review and absent an adequate discussion of any potential prejudice this posed to the Veteran. See Bernard v. Brown, 4 Vet. App. 384, 389 (1993). Specifically, the Board obtained a November 2013 VA medical opinion regarding the Veteran's lumbar spine disability, which addressed the Veteran's symptoms and the applicable rating criteria throughout the appeal period. The Joint Motion acknowledged that the Board provided the Veteran with a copy of this medical opinion for his review prior to adjudicating his claim, however, the parties found that this was not a substitute for providing the Veteran with an initial RO review of the evidence. They also determined that the Board failed to provide adequate reasons or bases as to why the Veteran was not prejudiced in this regard. See Bernard, 4 Vet. App. at 389 (finding that when the Board addresses in its decision a question that was not addressed by the RO, it must consider whether the claimant was given adequate notice of the need to submit evidence or argument on that question and an opportunity to submit such evidence and argument and address that question at a hearing and, if not, whether the claimant has been prejudiced thereby). Accordingly, in compliance with the Joint Motion, the Board finds an additional remand is required to afford the Veteran the benefit of an initial RO review of the evidence of record prior to adjudicating his claim.

Moreover, as the Veteran's most recent VA spine examination is dated June 2013, the Board also finds a new VA examination is required while the Veteran's claim is in remand status. See Green v. Derwinski, 1 Vet. App. 121, 124 (1991) (holding that VA's statutory duty to assist includes a thorough and contemporaneous medical examination). On remand, the RO must also obtain any outstanding private and VA medical treatment reports. See 38 C.F.R. § 3.159(c) (2014).

During the pendency of the Veteran's current claim on appeal, and subsequent to his notice of disagreement regarding this claim filed in January 2005, the RO denied entitlement to TDIU in March and September 2013 rating decisions. A statement of the case has not been issued to the Veteran for his TDIU claim, and therefore, a remand is required to provide him with one. Manlincon v. West, 12 Vet. App. 238, 240-41 (1999).

Accordingly, the case is remanded for the following action:

1. The RO must contact the Veteran and afford him the opportunity to identify or submit any additional pertinent evidence in support of his claims. Based on his response, the RO must attempt to procure copies of all records which have not previously been obtained from identified treatment sources. When requesting records not in the custody of a Federal department or agency, such as private treatment records, the RO must make an initial request for the records and at least one follow-up request if the records are not received or a response that records do not exist is not received. All attempts to secure this evidence must be documented in the claims file by the RO.

If, after making reasonable efforts to obtain named records the RO is unable to secure same, the RO must notify the Veteran and (a) identify the specific records the RO is unable to obtain; (b) briefly explain the efforts that the RO made to obtain those records; (c) describe any further action to be taken by the RO with respect to the claim; and (d) inform the Veteran that he is ultimately responsible for providing the evidence. The Veteran and his representative must then be given an opportunity to respond.

2. After completing the above actions, and any other development as may be indicated by any response received as a consequence of the actions taken in the paragraph above, the Veteran must be afforded the appropriate examination(s) to determine the current severity of his service-connected lumbar spine disability and associated neurological manifestations. The evidence of record, in the form of electronic records, must be made available to the examiner and the examiner must specify in the examination report that these records have been reviewed. All indicated testing must be conducted, to include radiological testing. Any indicated diagnostic tests and studies must be accomplished, to include x-rays. All pertinent symptomatology and findings should be reported in detail.

The examiner must conduct full range of motion studies on the Veteran's service-connected lumbar spine disability. The examiner must first record the range of motion on clinical evaluation, in terms of degrees with a goniometer. If there is clinical evidence of pain on motion, the examiner must indicate the specific degree of motion at which such pain begins. The same range of motion studies must then be repeated after at least three repetitions and after any appropriate weight-bearing exertion. Then, after reviewing the Veteran's complaints and medical history, the examiner must render an opinion as to the extent to which the Veteran experiences functional impairments, such as weakness, excess fatigability, lack of coordination, or pain due to repeated use or flare-ups, etc. Objective evidence of loss of functional use can include the presence or absence of muscle atrophy and/or the presence or absence of changes in the skin indicative of disuse due to the service-connected lumbar spine disability.

The examiner must also comment on the presence or absence of favorable or unfavorable ankylosis of the entire thoracolumbar spine and the presence or absence of intervertebral disc syndrome of the thoracolumbar spine. If intervertebral disc syndrome is present, the examiner must document the number of weeks in the past year the Veteran experienced incapacitating episodes. An incapacitating episode is defined as a period of acute signs and symptoms due to intervertebral disc syndrome that requires bed rest prescribed by a physician and treatment by a physician.

Additionally, the examiner must record the presence or absence of muscle spams, localized tenderness, or guarding, and must note whether any of these symptoms are severe enough to result in an abnormal gait or abnormal spinal contour such as scoliosis, reversed lordosis, or abnormal kyphosis.

The examiner must also state whether there are any neurological manifestations associated with the Veteran's lumbar spine disability. The examiner must specifically state whether the Veteran's lumbar spine disability results in complete or incomplete paralysis of any nerve, and the specific nerve(s) involved must be identified. If incomplete paralysis is found, the examiner must state whether the incomplete paralysis is best characterized as mild, moderate, or severe, with the provision that wholly sensory involvement must be characterized as mild, or at most, moderate. The examiner must also document whether incomplete paralysis results in marked muscular atrophy.

Finally, the examiner must consider and discuss the Veteran's lay statements and must provide an opinion on the effect the Veteran's lumbar spine disability and associated neurological manifestations have on his activities of daily living and occupational functioning.

3. After the above development has been completed, the Veteran must be afforded a VA examination to determine the functional effects of his service-connected disabilities on his ability to obtain and maintain employment consistent with his education and occupational experience. The claims file and all electronic records must be made available to the examiner, and the examiner must specify in the examination report that these records have been reviewed. All necessary special studies or tests must be accomplished. The examiner must elicit from the Veteran and record for clinical purposes a full work and educational history.

Based on the clinical examination, a review of the evidence of record, and with consideration of the Veteran's statements, the examiner must provide an opinion as to whether the functional effects of the Veteran's service-connected disabilities preclude him from securing and following substantially gainful employment consistent with his education and occupational experience. This opinion must be provided without consideration of his nonservice-connected disabilities, or age.

A complete rationale for all opinions must be provided. If the examiner cannot provide the requested opinion without resorting to speculation, it must be so stated, and the examiner must provide the reasons why an opinion would require speculation. The examiner must indicate whether there was any further need for information or testing necessary to make a determination. Additionally, the examiner must indicate whether any opinion could not be rendered due to limitations of knowledge in the medical community at large and not those of the particular examiner.

4. The RO must notify the Veteran that it is his responsibility to report for the examinations and to cooperate in the development of the claims. The consequences for failure to report for a VA examination without good cause may include denial of the claim. 38 C.F.R. §§ 3.158, 3.655 (2014). In the event that the Veteran does not report for the scheduled examinations, documentation must be obtained which shows that notice scheduling the examinations was sent to the last known address. It must also be indicated whether any notice that was sent was returned as undeliverable.

5. The examination reports must be reviewed by the RO to ensure that they are in complete compliance with the directives of this Remand. If deficient in any manner, the RO must implement corrective procedures at once.

6. The RO must issue a statement of the case and notification of the Veteran's appellate rights on the issue of TDIU. 38 C.F.R. § 19.26 (2014). The Veteran and his representative are reminded that to vest the Board with jurisdiction over the issue of TDIU, a timely substantive appeal to rating decision denying this claim must be filed. 38 C.F.R. § 20.202 (2014). If the Veteran perfects the appeal as to this issue, the case must be returned to the Board for appellate review. 

7. After completing the above actions, and any additional development deemed necessary, the RO must readjudicate the Veteran's claims. If any benefit on appeal remains denied, the Veteran and his representative must be provided a supplemental statement of the case and be given an adequate opportunity to respond. Thereafter, the case must be returned to the Board for appellate review.

No action is required by the Veteran until he receives further notice; however, he may present additional evidence or argument while the case is in remand status at the RO. Kutscherousky v. West, 12 Vet. App. 369 (1999). 



_________________________________________________
JOY A. MCDONALD
Veterans Law Judge, Board of Veterans' Appeals


Under 38 U.S.C.A. § 7252 (West 2014), only a decision of the Board of Veterans' Appeals is appealable to the United States Court of Appeals for Veterans Claims. This remand is in the nature of a preliminary order and does not constitute a decision of the Board on the merits of your appeal. 38 C.F.R. § 20.1100(b) (2014).