Citation Nr: 1237364 
Decision Date: 10/31/12 Archive Date: 11/09/12

DOCKET NO. 97-06 723A ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Montgomery, Alabama


THE ISSUE

Entitlement to service connection for a right leg disability (to include the right knee), either on a direct basis or as secondary to a service-connected disability. 


REPRESENTATION

Appellant represented by: Paralyzed Veterans of America, Inc.


WITNESS AT HEARING ON APPEAL

Veteran


ATTORNEY FOR THE BOARD

James G. Reinhart, Counsel


INTRODUCTION

The Veteran served on active duty from June 1982 to June 1985. 

This matter comes to the Board of Veterans' Appeals (Board) on appeal from a March 2000 rating decision of the Department of Veterans Affairs (VA) Regional Office (RO) in Montgomery, Alabama. 

This decision addresses only the issue stated on the title page. The issues of entitlement to increased ratings for left knee and low back disabilities and for a total rating based on individual unemployability that were remanded in July 2012 are not currently before the Board. 


FINDINGS OF FACT

1. A right leg (to include right knee) disorder did not have onset during and was not caused by active service. 

2. A right leg (to include right knee) disorder was not caused by a service-connected disability. 

3. A right leg (to include right knee) disorder was not worsened beyond its natural progression by a service-connected disability. 


CONCLUSION OF LAW

The criteria for service connection for a right leg (to include right knee) disorder have not been met. 38 U.S.C.A. §§ 1101, 1110, 1112, 1131, 1137, 5107(b); 38 C.F.R. §§ 3.102, 3.303, 3.307(a), 3.309(a) (2012), 3.310 (2006). 



REASONS AND BASES FOR FINDINGS AND CONCLUSION


I. Duties to Notify and Assist

As provided for by the Veterans Claims Assistance Act of 2000 (VCAA), VA has a duty to notify and assist claimants in substantiating claims for VA benefits. 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5107, 5126 (West 2002 & Supp.); 38 C.F.R. §§ 3.102, 3.156(a), 3.159, 3.326(a) (2012). 

Upon receipt of a complete or substantially complete application for benefits, VA is required to notify the claimant and his or her representative, if any, of any information, and any medical or lay evidence, that is necessary to substantiate the claim. 38 U.S.C.A. § 5103(a); 38 C.F.R. § 3.159(b); Quartuccio v. Principi, 16 Vet. App. 183 (2002). Proper notice from VA must inform the claimant of any information and evidence not of record (1) that is necessary to substantiate the claim; (2) that VA will seek to provide; and (3) that the claimant is expected to provide. 38 C.F.R. § 3.159(b)(1). This notice must be provided prior to an initial unfavorable decision on a claim by the RO. Mayfield v. Nicholson, 444 F.3d 1328 (Fed. Cir. 2006); Pelegrini v. Principi, 18 Vet. App. 112 (2004). For service-connection claims, this notice must address the downstream elements of disability rating and effective date. Dingess v. Nicholson, 19 Vet. App. 473 (2006).

In the instant case, the RO's initial unfavorable adjudication of the claim was in March 2000, prior to the VCAA. Therefore VA did not err by not providing notice prior to the initial unfavorable adjudication of the claim but did have a duty to provide the notice and subsequent due process. Pelegrini, 18 Vet. App. at 120. VA met its duty by letters sent to the Veteran in May 2008 and June 2010. Subsequent due process consisted of later readjudications of the claim, most recently in a July 2011 supplemental statement of the case. 

VA has a duty to assist claimants in the development of claims. This duty includes assisting claimants in the procurement of service and other pertinent treatment records and providing examinations when necessary. 38 U.S.C.A. § 5103A; 38 C.F.R. § 3.159. 

The Board finds that all necessary development has been accomplished, and therefore appellate review may proceed without prejudice to the Veteran. See Bernard v. Brown, 4 Vet. App. 384 (1993). The RO has obtained service, VA, and private treatment records as well as records associated with the Veteran's claim of entitlement to disability benefits through the Social Security Administration (SSA). Additionally, the Veteran has himself submitted private treatment records. 

VA afforded the Veteran relevant compensation and pension (C&P) examinations of his right knee in March 2006, January 2009, and April 2011. Those examination reports contain detailed histories and findings relevant to his right knee condition. Opinions were provided with those reports (and addendums) in April 2006 and April and June 2011. Determining that the rationale supporting those opinions was inadequate, the Board requested an expert opinion from a Veteran's Health Administration (VHA) physician in October 2011, consistent with 38 U.S.C.A. §§ 5109(A)(d), 7109 (West 2002 & Supp. 2012) and 38 C.F.R. § 20.901 (2012). The VHA physician provided that opinion in January 2012. 

The VHA physician relied on a complete history of the claimed disability as he had the entire claims file before him, including the findings from previous examinations. He provided a sufficient discussion in that regard. He also provided a sufficiently detailed description of the Veteran's right leg condition. Finally, the VHA physician provided an analysis that the Board can weigh along with other evidence of record. For these reasons, the Board finds his opinion adequate. See Stefl v. Nicholson, 21 Vet. App. 120, 123-25 (2007). 

The Board previously remanded this issue to the agency of original jurisdiction (AOJ which, in this case is the RO and the Appeals Management Center (AMC)) in December 2005, November 2009, and May 2010. Those remands were to provide the Veteran VCAA notice, assist him in obtaining private medical evidence, and provide medical examinations. The AOJ completed the Board's directives. Although the medical opinions provided were not adequate, that discrepancy was remedied by the January 2012 VHA opinion. Hence, the Board finds that no additional remand is necessary in this case. 

Neither the Veteran nor his representative has identified, and the record does not otherwise indicate, any additional existing evidence that is necessary for a fair adjudication of the claim that has not been obtained. Hence, no further notice or assistance to the Veteran is required to fulfill VA's duty to assist under the VCAA. Smith v. Gober, 14 Vet. App. 227 (2000), aff'd 281 F.3d 1384 (Fed. Cir. 2002); Dela Cruz v. Principi, 15 Vet. App. 143 (2001); see also Quartuccio v. Principi, 16 Vet. App. 183 (2002).


II. Service Connection

Service connection may be granted for a disability resulting from a disease or injury incurred in or aggravated by active service. See 38 U.S.C.A. §§ 1110, 1131 (West 2002); 38 C.F.R. § 3.303(a) (2011). "To establish a right to compensation for a present disability, a Veteran must show: "(1) the existence of a present disability; (2) in-service incurrence or aggravation of a disease or injury; and (3) a causal relationship between the present disability and the disease or injury incurred or aggravated during service"-the so-called "nexus" requirement." Holton v. Shinseki, 557 F.3d 1362, 1366 (Fed. Cir. 2010) (quoting Shedden v. Principi, 381 F.3d 1163, 1167 (Fed. Cir. 2004). 

Certain chronic diseases, including arthritis, may be presumed to have been incurred in or aggravated by service if manifest to a compensable degree within one year of discharge from service, even though there is no evidence of such disease during service. 38 U.S.C.A. §§ 1101, 1112 (West 2002 & Supp. 2012); 38 C.F.R. §§ 3.307(a), 3.309(a) (2012). 

Disability which is proximately due to or the result of a service-connected disease or injury shall be service connected. 38 C.F.R. § 3.310(a) (2006). The secondary condition shall be considered a part of the original condition. Id. The phrase "due to or the result of" encompasses disability caused by or aggravated by the service-connected disease or injury. See Allen v. Brown, 7 Vet. App. 439 (1995). Section 3.310 was revised effective October 10, 2006, during the course of the Veteran's appeal. That revision imposed additional burdens on a claimant seeking to show that a service-connected disease or injury aggravated disability for which service connection had not yet been established. The appropriate version of § 3.310 in the instant case is that version effective prior to that to that revision, because that version is potentially more favorable to the Veteran. See Landgraf v. USI Film Products, 511 U.S. 244 (1994); Kuzma v. Principi, 341 F.3d 1327 (Fed. Cir. 2003); VAOPGCPREC 7-2003. 


II.A. Service Connection - Factual Background

Service treatment records do not document any complaints, symptoms, or abnormal findings of the Veteran's right leg or right knee. As to orthopedic complaints of the lower extremities he reported a right sprained ankle, left knee pain, and chest and low back pain, as detailed below. 

January 1984 treatment notes document the Veteran's report of left knee discomfort following a fall two weeks earlier. Assessment was soft tissue injury of the left knee. February 1984 notes document symptoms, findings, and an assessment of his left knee. There is no mention of his symptoms, findings, or assessment of the right knee. 

In May 1984, he complained of pain in the arches of his right foot and in his lateral right ankle after he tripped playing basketball. He was assessed with a soft tissue sprain. X-ray study was negative for fracture. Plan was for him to return to duty. 

In September 1984, he reported back and chest pain of unknown etiology. He was assessed with costrochondritis / chronic back pain. X-rays showed no evidence of injury or disease process. He was returned to duty. In October 1984, he reported low back pain that had existed for four months with no known etiology. November 1984 notes document his report of left knee pain for two months following a fall from a vehicle. In May 1985, he again reported left knee pain, recently exacerbated by running. He reported that he had left knee pain for seven months following a previous fall. 

In a May 22, 1985 report of medical history, the Veteran reported that he either then had or had previously had swollen joints. There is a note by a medical professional referring to his left knee. A report of medical examination from that same date indicates an abnormal clinical evaluation of his left knee. He was released from active duty on June 28, 1985. 

VA received the Veteran's original application for compensation benefits in August 1985. He claimed entitlement to compensation for disability of his left knee and for sinusitis. Received that same month is a VA Form 21-4176, Report of Accidental Injury in Support of Claim for Compensation or Pension. He stated that the fell from a truck in October 1984 and landed on his hands and knees. X-rays were obtained of both knees in September 1985; the impression was a normal study. The RO granted service connection for a left knee disability, described as lateral meniscectomy left knee, in a May 1987 rating decision. 

VA treatment records from 1985 to 1995 document complaints of and treatment for left knee symptoms. Also associated with the claims file are claims and appeals for an increased rating for his left knee disability. There are no reports of right knee symptoms. In February 1995, he claimed entitlement to service connection for a low back condition, claiming that his left knee disability affected his lower back. 

Treatment records from Joseph D. Ray M.D. include entries in 1994. In a March 14, 1994 entry, Dr. Ray referred to the Veteran's injury of his left knee during service, that he had surgery of the left knee, and that he had trouble with it since 1987. Dr. Ray stated that at the time of the note the Veteran had pain and swelling of the left knee. Dr. Ray stated that "[w]e can offer to aspirate the knee to get more information, maybe help to bring about subsidence of his acute situation." In March 18, 1994 notes Dr. Ray referred only to the left knee. He stated that he aspirated the knee and obtained a small amount of fluid. He did not mention the right knee. In March 21 handwritten notes (the previously described notes were typewritten) Dr. Ray referred to aspiration of the knee three days earlier. He referred to the knee by an abbreviation that could be read as "Rt" or "Lt" as the "R" and the "L" were written on top of each other as if attempting to correct a mistake. March 31, 1994 notes include a handwritten and a typewritten portion. All references in the typewritten portion are to the left knee. In the handwritten portion, Dr. Ray crossed out the abbreviation "rt" and followed this with "lt" before the word "Knee." 

VA afforded the Veteran a C&P general medical examination in April 1995. He reported problems with his left knee, low back, left shoulder, and both hands. There are no reports of symptoms of his right knee or any findings involving his right knee. A May 1997 private treatment note documents that the Veteran had a lumbar epidural. This note documents his report that he was involved in a motor vehicle accident six weeks earlier and had developed pain in his back, neck, and down his right leg. He provided the practitioner with a history that he was disabled because of difficulties with his knees when he was in military service. June 1997 treatment records from Joseph N. Saba, M.D. document the Veteran's reports of injuries in a March 1997 motor vehicle accident and that the accident aggravated pre-existing injuries. Dr. Saba stated that "[t]he only prior injury that his gentleman has had was of a left knee surgery while in the service. He is retired from the Marine Corp." 

In an April 1998 rating decision, the RO granted service connection for chronic low back syndrome. 

March 1999 VA treatment notes document the Veteran's report that his left knee buckled. Other March 1999 VA treatment notes include his report that his right knee gave way at times and his report that he had surgery on his right knee in 1987. He requested x-rays of his knees. X-rays were obtained of both knees and the impression was mild arthritic changes of the left knee and an essentially negative examination of the right knee. 

An October 20, 1999 private treatment note, signed by BH Freeman, documents that the Veteran had swelling of his right knee after four miles of walking. X-rays were negative. Impression was non-specific synovitis of the right knee. He reported that he was still having problems on November 3, 1999, and BH Freeman stated that he would be evaluated by Dr. Cockrell. 

On November 10, 1999, the RO received a writing from the Veteran in which he stated as follows:

I wish to put in for a secondary service connected condition directly related to my service connected Left Leg and Back condition that is presently 30% rated. This condition is my Right Leg. It has been severely disabled because of the two above service connected conditions. I have severe pain and limited motion with the Right Leg disability. This condition needs to be service connected also. I am sending in medical information related to this condition. If you need anything else form me, let me know and I will furnish it if I can. I will have an MRI on 11/10/99 at 7:00 A.M. related to my Right Knee at the Mobile Infirmary Medical Center. The operation will consist of repairing torn ligaments and possible fluid build-up and other conditions not known at this point in time until the operation occurs. 

November 12, 1999 notes signed by Dr. Cockrell document that an MRI showed a probable lateral meniscus tear. Dr. Cockrell performed an arthroscopy of the right knee with shaving of the chondral defect, medial femoral condyle, and a lateral meniscectomy on November 22, 1999. These notes were added to the record in March 2006. 

January 2000 treatment notes from Dr. Edward Schnitzer document the Veteran's report that he had last seen the Veteran in 1998. Dr. Schnitzer diagnosed lumbar strain. He also noted the Veteran's report that he was status post right knee surgery of three weeks earlier. 

The RO denied service connection for the right knee condition in March 2000. 

A September 14, 2000 note signed by Dr. Cockrell documents that the Veteran was "still having trouble with his knee." A September 29, 2000 note signed by Dr. Cockrell, documents that the Veteran had effusion of his knee and that fluid was aspirated from the knee. He did not identify if this was the right or left knee. 

August 31, 2001 notes from the Mobile Infirmary Medical Center emergency department document that the Veteran was in a motor vehicle accident in which he hit his knee on the dash or the steering wheel. He had right knee swelling and pain. His right knee was immobilized and the report describes the injury as a contusion. The records were added to the claims file in March 2006. 

In October 2001, the Veteran testified before the undersigned that he wore braces on both knees and used a cane. He testified that he had been told that his left knee was causing a lot of problems with his right knee because of the pressure he puts on his right knee. He testified that the treatment he was receiving for his knees was through VA. 

November 2001 notes from Alabama Orthopedic Clinics document that the Veteran continued to have right knee pain. Diagnosis was right knee injury from a recent motor vehicle accident. On December 3, 2001 he was diagnosed with right knee effusion, chondromalacia patella, and torn lateral meniscus. On December 12, 2001 he underwent arthroscopy of the right knee to repair a torn lateral meniscus. Sutures were removed a week later and the physician stated that he would have a 15 percent permanent impairment of the right knee as the result of his injury. These notes were added to the record in March 2006. 

Private treatment records received with the SSA disability records include a July 2002 handwritten note documenting that the Veteran complained of right knee pain and swelling of two weeks duration and the statement that Dr. Cockrell performed surgery about three years earlier. Examination in July 2002 showed right knee effusion. The Veteran did not recall obvious trauma and reported that the pain had just come over him in the past 2 to 3 weeks. X-rays showed mild arthrosis of the knee. The impression was arthritic flare. The clinician indicated that he drained fluid from the knee and injected steroids and would see the Veteran on an as needed basis. 

In January 2003 VA primary care practitioner requested an orthopedic consult. The physician's assistant stated as follows: 

This patient has a very unusual presentation of pain and stiffness of both knees that is somewhat out of proportion. Please see physical exam findings below. I would like to get a second opinion by the New Orleans Orthopedic Group to see if they find anything other than a mild degenerative joint disease since he has such extreme symptoms that do not correlate clinically. 

The practitioner stated that she found no obvious surgical condition of either knee. The Veteran reported that he had a prior partial meniscectomy and arthroscopy of the right knee in approximately the year 2000. The Veteran reported that his bilateral leg pain and knee pain were related to a motor vehicle accident during military service. A report of an x-ray study of his right knee the following day notes that no arthritic changes were shown. 

September 2003 VA treatment notes document that x-rays showed early degenerative joint disease of the right knee. He had complained of right knee swelling and pain. 

Beginning in February 2006, VA treatment notes started including the notation that that Veteran was status post right knee surgery times two for arthroscopic meniscus surgery and status post left knee surgery for the same. In March 2006, the Veteran underwent a VA C&P examination of his right knee. The examiner indicated that he had reviewed the claims file but that there were no records of treatment of his right knee and the only information that the examiner had was what was supplied to him via interview with the Veteran. That information was that the Veteran believed that he had an initial procedure on his right knee in 2000 and another procedure between 2001 and 2002. He also reported that a private physician had aspirated the right knee in January 2006. X-rays of the right knee were essentially normal. The impression of the examination was that the Veteran had postoperative arthroscopic meniscectomy of the right knee times two with chronic pain and swelling. The examiner indicated that the Veteran was going to have records sent to the examiner from his private physicians. 

An April 2006 addendum to the March 2006 examination documents that medical records had been sent to the examiner. These are the records already described above as added to the record in March 2006 - consisting primarily of the 1999 and 2001 right knee symptoms and treatment. The examiner opined that it was not as likely as not that his right knee condition was causally related to or increased by his service-connected left knee condition. The examiner stated that the Veteran had two right knee surgeries since 1999 and the examiner saw no indication that the November 1999 surgery had any relationship to his left knee condition. He further remarked that the second surgical procedure was related to the problems from the August 31, 2001 motor vehicle accident. 

A March 2007 SSA decision includes mention of cervical spine surgery, but no mention of right knee surgery. Private treatment records associated with those SSA records includes mention of elbow, arm, shoulder, cervical spine, and lumbar spine treatment. 

A February 2007 consultation report signed by David G. Walsh, M.D., documents that the Veteran had "history with two knee surgeries, maybe arthroscopies, maybe open surgeries on both knees and/or the cervical surgery which was also twice." Dr. Walsh saw him for low back pain. Treatment notes from Dr. James West III document that the Veteran reported his chief complaint in June 2007 involved his right knee and that he was using a cane. Records from Dr. West's office going back to 2004 do not otherwise refer to symptoms of the Veteran's right knee. In December 2008 notes, Dr. Walsh, who was seeing him for low back pain, remarked that his knees were large, especially the left one. Dr. Walsh described his knee as deformed an arthritic. He made no specific comment about his right knee. 

In January 2009, VA afforded the Veteran a C&P general medical examination. The examiner recorded the Veteran's report that he was diagnosed with degenerative joint disease of the right knee in the early 1990s and underwent arthroscopy then and in 2000. He also reported that he underwent physical therapy following each arthroscopy. His right knee was examined. The examiner stated that there was no functional limitation secondary to objective findings. 

Of record is a report of a January 2010 MRI study of the Veteran's right knee, signed by Stephen C. Ashe, D.O. Dr. Ashe listed an impression of early degenerative changes of the right knee, tears of the lateral meniscus, medial meniscus, and ACL, chondromalacia patella, join effusion, and a small bakers cyst. 

In April 2011, the Veteran underwent a VA C&P examination of numerous joints. The examiner indicated review of the claims file. As to the right knee, the Veteran reported to the examiner that he had undergone two right knee surgeries. He also reported that he had been in three motor vehicle accidents since the year 2000. He reported that he injured his right knee in one of those accidents, hitting it on the dashboard and resulting in swelling. The Veteran reported that his right knee problems had onset after service - around the year 2000. He reported to the examiner that he thought it was caused by him putting pressure on his right knee due to left knee problems. The examiner noted the 1999 and 2001 symptoms and surgical treatment of his right knee. He diagnosed right knee degenerative joint disease and opined that the right knee condition was not caused by, related to, or worsened beyond its natural progression by the Veteran's service connected left knee condition. He did not provide a rationale for those conclusions. 

In June 2011 the examiner provided an addendum to the April 2011 report. He added that the Veteran's right knee condition was not caused by, related to, or worsened beyond its natural progression by his service-connected low back condition or his service-connected left knee condition. He stated that "[n]o nexus of connection has been demonstrated between this non service connected condition and aforementioned service connected conditions." 

In October 2012, the undersigned requested an expert opinion form a Veterans Health Administration (VHA) physician. The physician, a staff attending orthopedic surgeon, provided the opinion in January 2012. 

The VHA physician indicated that he had reviewed the Veteran's claims file. He provided a detailed history of the relevant history as contained in the medical records and that history is consistent with what the Board has detailed above. The examiner stated that he had applied evidence based medicine to the case. 

The examiner answered questions posed by the Board and provided the following opinions and supporting rationale: 

I am unable to confirm any manifestation objectively of any right knee or leg disorder that is other than that of the natural history of degenerative joint disorder as currently diagnosed and currently in my opinion totally unrelated to the service-connected disabilities of the left knee and the low back. 

There is no causal relationship of the right knee degenerative joint disease with at least as likely as not that the diagnosed right knee right leg condition is in part or in total related to any active service related disability or the result of the service-connected low back disorder or left knee lateral meniscectomy and post traumatic arthritis, or the result of aggravation of the cervical spine disability or the left knee lateral meniscectomy with post traumatic arthritis. 

There is only support in the literature for the aspect of hip fusion creating approximately 20 years later dysfunction into the low back or potentially vice versa. There is no indication that a patient who has unilateral arthritis of the knee will create arthritis of the other knee. In fact, there are many patients who have unilateral arthritis due to a post traumatic situation and never have to have anything done with the other knee. This is the natural history. However, there is also a natural history which has to be accepted and recognized, and that is we are all getting older, and that there is a natural process of degeneration ongoing through life. 

Mr. [the Veteran] has obviously been able to convince administrators that he is immune to the degenerative processes of life and that all conditions that affect him are related to some preceding work injury or service connected disability. This lacks physiological, etiological or even common sense for a causation relationship. I do a very significant amount of peer reviewed and records review for medical legal issues. I have not seen in my experience this type of far-reaching attempt to relate the various body parts to a preceding allowed injury to a separate joint as related to another joint. I would point out that there are resources and references that deal with the aspects of causal relationships. Just because a condition is present after an event, does not validate that the event was the cause of that condition. In [the Veteran] condition, I find no support objectively for any . . . right knee dysfunction as related to his service connected disabilities or to his service at all for the country which I have also provided. 


II.B. Service Connection - Analysis

After reviewing all relevant evidence of record, the Board concludes that the appeal must be denied. 

First, the preponderance of evidence is against a finding that arthritis manifested within one year of separation from active service. There are no reports of arthritis until many years after separation from service. The Board has considered the Veteran's statement that he was diagnosed with arthritis in the early 1990s but finds this to be inaccurate. There is no mention of his right knee in the earliest post service treatment records and he did not report any problems with his right knee until 1999. Moreover, x-rays in 1999 showed his right knee to be normal. The preponderance of evidence shows that right knee degenerative disease was first found more than a decade after separation from active service. Therefore, the presumptive provisions for chronic diseases, found at 38 C.F.R. § 3.307(a) and § 3.309(a) are not for application. 

As to a theory of direct service connection the service treatment records provide evidence against a finding that the Veteran sustained an injury of his right leg during service of the type that he seeks compensation. The only mention of his right lower extremity was the sprained ankle in January 1984. There is no evidence that he had symptoms of the sprained ankle for longer than several days. There is no mention of any injury of his right knee. Given the reports of left knee pain if he injured his right knee or some other part of his right leg in the fall in 1984 it is reasonable to expect that there would be some mention of right knee or right knee symptoms following the fall. It is also noted that the Veteran has never complained of right ankle symptoms since 1984. Although his claim was for service connection for a right leg disability, it cannot reasonably be read as encompassing his right ankle. Regardless, there is no evidence showing that he has a right ankle disability so inclusion of his right ankle in the claim simply does not matter. 

There is a considerable amount of post service evidence regarding his left knee and low back up to the present. However, he did not mention right knee symptoms until many years after service. In 1995 he reported problems with his low back, left knee, hands, and shoulder but did not mention is right knee. He reported to Dr. Saba only that he had left knee surgery. 

As to the entries from Dr. Ray in March 1994, the Board finds these to refer to his left knee. The handwritten attempt at correction of the abbreviations of 'Rt' and "Lt' the Board finds to be corrections to 'Lt" because it is only his left knee that is otherwise referred to in notes from that month and it is clear from the notes that it was his left knee, not his right knee, that Dr. Ray aspirated. The fact that there are numerous reports of left knee problems but no reports of right knee problems, both during service and for many years after service, tends to show that the Veteran's right knee disorder did not have onset during service nor was directly caused by an event during service. 

The Board has considered the Veteran's report in May 1997 that he was disabled because of difficulties with his knees during service, and the March 1999 report of surgery on his right knee in 1987 but finds that the evidence just discussed outweighs such reports. 

His own report to the examiner in February 2006 was that the initial procedure on his right knee was in the year 2000 and his report to the VA practitioner in 2003 referring to a year 2000 right knee surgery contradict the report of 1987 right knee surgery. Those contradictions and the fact that surgery of his right knee in 1987 is not consistent with the other evidence of record, leads the Board to the conclusion that the report of 1987 right knee surgery is not credible. Hence, the report of 1987 right knee surgery is afforded very little weight. The Board finds that he did not have surgery of his right knee in 1987. 

As to the report of disability due to difficulties with his knees during service, the fact that the Veteran had consistently reported left knee problems for many years, both during service and since service, but had never reported problems of his right knee during service or for ten years after service (as of 1997) leads the Board to the conclusion that the report of disability due to difficulty with his knees (as opposed to knee) during service is not credible. His report in this regard is afforded very little weight. 

Additionally, the January 2012 VHA physician report includes an expert opinion that that his right knee condition is not directly related to his active service. 

In summary, the preponderance of evidence is against a finding that he directly injured his right knee during service. 

The Board now turns to a more detailed discussion of that January 2012 opinion as it relates to not only directly to his service but also the theory put forward by the Veteran that his right knee condition is related to his service-connected left knee and low back conditions. The principle argument put forward by the Veteran is that his right knee condition was caused by or aggravated by his service connected left knee and/or low back disability. The expert evidence of record is against granting service connection on that basis. 

In this regard, the most probative evidence is that provided by the VHA examiner in January 2012. The Board finds the examiner's reasoning to adequately support his conclusions and finds the reasoning to be a basis for assigning the opinion significant probative weight. See Nieves-Rodriguez v. Peake, 22 Vet. App. 295, 304 (2008). His opinion also serves as an explanation for why the examiners who provided the April 2006 and April 2011 opinions apparently had difficulty explaining their conclusions. The VHA physician's rationale can be summarized as there simply being no support (in the physician's words this includes no etiological, physiological, or common sense support) for a theory that the Veteran's right knee condition is at all related to his low back or left knee conditions. 

It is noted that this explanation was not based only on the VHA physician's own experience but also supported by the state of medical knowledge. His reference to a relationship between hip and low back conditions demonstrates that the physician relied not only on his experience and knowledge but the professional literature applicable to relationships between disability of one joint and another joint. 

The Board is aware that the physician stated, in paragraph six of his opinion, that "the real issue here is causation." That statement cannot reasonably be read as limiting the opinion to exclude aggravation. The VHA examiner was clear in his opinion that the Veteran's right knee condition, which is arthritis, was not related in any way to his low back condition or left knee condition. Although statute and regulation refer to aggravation as distinct from causation, the VHA physician was not incorrect from the perspective of aggravation involving "cause." Even where aggravation is found to have occurred, such "aggravation" is necessarily a worsening caused by a service connected condition (or in the case of aggravation during service of a preexisting condition it is a worsening caused by some event or condition during service). Hence, the Board finds that the VHA physician's opinion is adequate and compelling evidence against a finding that the Veteran's service-connected low back condition and/or left knee condition caused (in the etiological sense) his right knee condition or caused a right knee condition to worsen beyond its natural progression, i.e., aggravated the condition. 

Also considered by the Board are the statements offered by the Veteran. He reported in October 2001 that he had been told that his left knee was causing a lot of problems with his right knee because of the pressure he puts on his right knee. But in the April 2011 examination report, the examiner stated that the Veteran reported to the examiner that he (the Veteran) thought it was caused by him putting pressure on his right knee due to left knee problems. As listed in the Factual Background section of this decision, several physicians have treated or examined the Veteran's right knee. These physicians were all aware of his left knee history and most were aware of his low back history. None of the notes from those physicians include a statement that his right knee condition was related to his left knee condition or low back condition. The Board would expect that at least one of those physicians would have mentioned a relationship if he or she informed the Veteran of such a relationship. The Board thus affords little probative weigh to the Veteran's statements regarding what he was told about such a relationship. 

The Board has also considered the Veteran's opinion that his right knee condition is related to his left knee condition and / or low back condition. There is no evidence of record showing that the Veteran has expertise in diagnosing orthopedic conditions. He is therefore a non-expert, or layperson, in this regard. Although it is error to categorically reject lay nexus evidence as not competent, whether the evidence is competent depends on the facts of the case - most significantly to what question the layperson seeks to apply his or her lay opinion. See Davidson v. Shinseki, 581 F.3d 1313, 1316 (Fed. Cir. 2009); Jandreau v. Nicholson, 492 F.3d 1372, 1377 (Fed. Cir. 2007). Factors applicable to deciding if layperson nexus evidence is competent are whether the question involved is a simple one and whether it can be answered by observation with the five senses. Jandreau, 492 F.3d at 1377; Layno v. Brown, 6 Vet. App. 465, 469 (1994) (laypersons are competent to report that which they have observed with their five senses). 

Here, whether his right knee condition is related to his left knee condition or his low back condition is neither a simple question nor is it one that can be answered by observation with the five senses. That it is not answerable by observation with the five senses is clear - there is simply nothing to observe that would allow for distinguishing a relationship between his right knee condition and his low back condition or left knee condition from some other cause for his right knee condition- such as described by the VHA physician. That it is not a simple question is shown by the fact that medical professionals do engage in research as to such relationships, as indicated by the VHA physician's discussion regarding a relationship between hip and low back conditions. For these reasons, the Board concludes that the Veteran's nexus opinion is not competent evidence under the facts of this case. 

In summary, the preponderance of evidence is against a finding that the Veteran's right knee disorder had onset or was directly caused by his active service, that arthritis of the right knee manifested within one year of separation from active service, or that his service connected disabilities have caused or aggravated a right knee disorder. His appeal as to this issue must therefore be denied. There is no 

CONTINUED ON NEXT PAGE)

reasonable doubt to be resolved as to this issue. See 38 U.S.C.A. § 5107(b) (West 2002); 38 C.F.R. § 3.102 (2012); Gilbert v. Derwinski, 1 Vet. App. 49 (1990).


ORDER

Entitlement to service connection for a right leg (to include right knee) disability is denied. 



____________________________________________
MARK W. GREENSTREET
Veterans Law Judge, Board of Veterans' Appeals

Department of Veterans Affairs