Citation Nr: 1719246 
Decision Date: 05/31/17 Archive Date: 06/06/17

DOCKET NO. 12-32 560 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Atlanta, Georgia


THE ISSUES

1. Entitlement to an initial rating higher than 10 percent for status post hernia repair with ulcer crater (claimed as GERD and hernia surgery).

2. Entitlement to service connection for fibromyalgia (claimed as painful and swollen joints).


REPRESENTATION

Appellant represented by: Georgia Department of Veterans Services


ATTORNEY FOR THE BOARD

Bridgid D. Houbeck, Counsel



INTRODUCTION

The Veteran served on active duty from February 1979 to December 1985.

This matter comes to the Board of Veterans' Appeals (Board) on appeal from a January 2009 rating decision of the Department of Veterans Affairs (VA) Regional Office (RO) in Columbia, South Carolina, which granted service connection for hypertension, Bell's palsy, status post hernia repair with ulcer crater and plantar fasciitis with Achilles' tendinitis and denied service connection for heart condition, residuals of cerebrovascular accident, painful and swollen joints, bilateral hearing loss, and tinnitus. Jurisdiction of the case was subsequently returned to the Atlanta, Georgia RO.

In August 2009 the Veteran filed a notice of disagreement with the initial rating assigned for her hernia and with the denials of service connection for heart condition, painful and swollen joints, bilateral hearing loss, and tinnitus. The RO issued a statement of the case on these issues in June 2012. The Veteran perfected her appeal with regard to an initial rating for status post hernia repair with ulcer crater and service connection for painful swollen joints with a November 2012 VA Form 9.

In April 2016, the Board denied the Veteran's claims of service connection for a cervical spine disorder and bilateral knee disorder and remanded the remaining issues of a higher initial rating for status post hernia repair with ulcer crater and service connection for fibromyalgia for further development.

In September 2016, the Veteran filed a claim of clear and unmistakable error (CUE) in the April 2016 Board decision that denied service connection for a cervical spine disorder and a bilateral knee disorder. This claim is being processed separately. It will be assigned its own docket number and will be addressed in a separate Board decision.



FINDINGS OF FACT

1. Throughout the entire appeal period, the Veteran's status post hernia repair with ulcer crater has been manifested by episodes of gastric distress, gas pain, gassiness, pyrosis, reflux, and sleep disturbances caused by esophageal reflux.

2. The Veteran does not have fibromyalgia that is etiologically related to active service.


CONCLUSIONS OF LAW

1. The criteria for a rating higher than 10 percent for status post hernia repair with ulcer crater have not been met. 38 U.S.C.A. §§ 1155, 5107 (West 2014); 38 C.F.R. §§ 3.102, 4.1, 4.2, 4.3, 4.7, 4.10, 4.21, 4.114, Diagnostic Code (DC) 7399-7346 (2016).

2. The criteria for service connection for fibromyalgia have not all been met. 38 U.S.C.A. §§ 1101, 1131, 1112, 1113, 5107 (West 2014); 38 C.F.R. §§ 3.102, 3.303 (2016).


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

I. Due Process

VA has a duty to notify and assist claimants in substantiating claims for VA benefits. See e.g. 38 U.S.C.A. §§ 5103, 5103A (West 2014) and 38 C.F.R. § 3.159 (2016). In the instant case, VA provided adequate notice in a letter sent to the Veteran March 2008. 

VA has a duty to assist a claimant in the development of a claim. This duty includes assisting the claimant in the procurement of relevant treatment records and providing an examination when necessary. 38 U.S.C.A. § 5103A; 38 C.F.R. § 3.159. 

The Board finds that all necessary development has been accomplished, and therefore appellate review may proceed without prejudice to the Veteran. See Bernard v. Brown, 4 Vet. App. 384 (1993). Service and VA treatment records are associated with the claims file. VA provided relevant examinations as discussed in further on in the decision.

There is no indication of additional existing evidence that is necessary for a fair adjudication of the claim that is the subject of this appeal. Hence, no further notice or assistance to the Veteran is required to fulfill VA's duty to assist. 


II. Initial Rating - Hernia

The Veteran was granted service connection for status post hernia repair with ulcer crater in the January 2009 rating decision on appeal. At that time, she was awarded a 10 percent rating effective February 22, 2008. The Veteran has appealed that initial rating.

Disability ratings are determined by applying the criteria set forth in the VA's Schedule for Rating Disabilities, which is based on the average impairment of earning capacity. Individual disabilities are assigned separate diagnostic codes. 38 U.S.C.A. § 1155; 38 C.F.R. § 4.1. The basis of disability evaluations is the ability of the body as a whole, or of the psyche, or of a system or organ of the body to function under the ordinary conditions of daily life including employment. 38 C.F.R. § 4.10. 

In determining the severity of a disability, the Board is required to consider the potential application of various other provisions of the regulations governing VA benefits, whether or not they were raised by the Veteran, as well as the entire history of the Veteran's disability. 38 C.F.R. §§ 4.1, 4.2; Schafrath v. Derwinski, 1 Vet. App. 589, 595 (1991).

If the disability more closely approximates the criteria for the higher of two ratings, the higher rating will be assigned; otherwise, the lower rating is assigned. 38 C.F.R. § 4.7. It is not expected that all cases will show all the findings specified; however, findings sufficiently characteristic to identify the disease and the disability therefrom and coordination of rating with impairment of function will be expected in all instances. 38 C.F.R. § 4.21. 

In deciding this appeal, the Board has considered whether separate ratings for different periods of time, based on the facts found, are warranted, a practice of assigning ratings referred to as "staging the ratings." See Fenderson v. West, 12 Vet. App. 119 (1999); Hart v. Mansfield, 21 Vet. App. 505 (2008). 

This disability is currently rated under hyphenated diagnostic code 7399-7346. Hyphenated diagnostic codes are used when a rating under one diagnostic code requires the use of an additional diagnostic code to identify the basis for the rating assigned; the additional code is shown after the hyphen. 38 C.F.R. § 4.27. When an unlisted disease, injury, or residual condition is encountered, requiring rating by analogy, the diagnostic code number is "built up" with the first two digits being selected from that part of the schedule most closely identifying the part, and the last two digits being "99" for an unlisted condition. Id.

Hiatal hernias are rated under Diagnostic Code (DC) 7346. 38 C.F.R. § 4.114. Hiatal hernia with two or more of the symptoms for the 30 percent rating of less severity is rated 10 percent disabling. 38 C.F.R. § 4.114, DC 7346. Hiatal hernia with persistently recurrent epigastric distress with dysphagia, pyrosis, and regurgitation, accompanied by substernal or arm or shoulder pain, productive of considerable impairment of health, is rated 30 percent disabling. Id. Hiatal hernia with symptoms of pain, vomiting, material weight loss and hematemesis or melena with moderate anemia; or other symptom combinations productive of severe impairment of health, is rated 60 percent disabling. Id.

In September 2008 the Veteran underwent a VA examination in conjunction with this appeal. This examination contained all the information necessary to rate this disability. This examiner reviewed the objective evidence of record, documented the Veteran's current complaints, and performed a thorough clinical evaluation, then offered an opinion as to the nature of the claimed disability, accompanied by a rationale. Therefore, this examination is adequate for VA purposes. At the time of this examination, the Veteran stated that since service she had had problems with belching and a bitter taste with esophageal burning. She had not been prescribed any medication for this disability. She also reported quite a bit of flatulence for which she took Gas-X. At time she had stomach bloating and belching. She did not have diarrhea or constipation. She denied any problems swallowing. Eating spicy food caused nausea and vomiting. She had ventral hernia repair in service and denied any other abdominal surgery. This disability did not affect her activities of daily living or occupational functioning. She denied weight loss and instead reported an eight-pound weight gain since July. She denied any knowledge of anemia. Physical examination found the Veteran well-appearing, well-nourished, well-groomed, pleasant, and cooperative. Her abdomen was soft and nontender without rebound or guarding. No masses or organomegaly was palpated and no abdominal pulsations were noted. Bowel sounds were present throughout. There was a well-healed 8 cm midline scar that was nontender and flat/smooth without adherence, breakdown, ulceration, elevation, depression, tissue loss, edema, keloid, hypopigmentation, disfigurement, burns, or limitation of function. A complete blood count (CBC) was normal. An upper gastrointestinal series (UGI) found a "small collection of barium with radiating folds at the base of the duodenal bulb may be mucosa seen end on or small active ulcer crater." This examiner diagnosed the Veteran with gastroesophageal reflux disease (GERD) and found that her current gastrointestinal disability was at least as likely as not related to her in-service treatment for gastrointestinal irritation.

An August 2009 private treatment record shows continued treatment for GERD with Nexium. Physical examination found the Veteran's abdomen soft, nontender, and non-distended. Bowels sounds were present. There was no hepatosplenomegaly. 

In December 2010 the Veteran underwent another VA examination in conjunction with this claim. Again, this examination contained all the information necessary to rate this disability. This examiner reviewed the objective evidence of record, documented the Veteran's current complaints, and performed a thorough clinical evaluation. Therefore, this examination is adequate for VA purposes. At that time, the Veteran reported that she had sought treatment in 2009 for abdominal discomfort and an ultrasound revealed a hernia. She was not prescribed a truss or any abdominal exercises, but was instructed to lose weight. The Veteran was not on any medications for reflux. An abdominal examination found a scar in the upper ventral area above the umbilicus at 10.5 cm x 1.25 cm at the largest diameter. It was slightly darker in coloration. There was a noted ridge that was minimal. There were no adhesions. On lifting both feet off of the exam table, there was some bulging noted in the 1ower half on the right and left that extends down about 4 cm that was tender on palpation. There was no significant herniation. She was positive for bowel sounds in all quadrants and negative for hepatosplenomegaly or masses. CBC was within normal limits. No anemia was noted. The Veteran was diagnosed with a continued mild sliding hiatal hernia with mild associated GERD and previous ventral hernia repair with minimal bulging. No treatment other than weight loss had been prescribed. This examiner also noted that the Veteran had last work in 2009 as a manager of a restaurant, which had closed nine months later.

In July 2012 the Veteran underwent another VA examination in conjunction with this claim. Again, this examination contained all the information necessary to rate this disability. This examiner reviewed the objective evidence of record, documented the Veteran's current complaints, and performed a thorough clinical evaluation. Therefore, this examination is adequate for VA purposes. At the time of this examination, the Veteran reported problems with greasy food and problems with gas that were treated with anti-gas medications. She continued to have gas pains. Modifications to her diet had helped so that she did not require medication, but she did take Pepto-Bismol or Mylanta during flare-ups. She did not take continuous medication for this condition. Her symptoms included infrequent episodes of gastric distress, pyrosis, and sleep disturbances caused by esophageal reflux occurring twice a year and lasting between one and nine days. The Veteran did not have an esophageal stricture, spasm or the esophagus, or an acquired diverticulum of the esophagus. She had an associated surgical scar, but this scar was not painful or unstable and did not affect an area greater than 39 square centimeters (6 square inches). The Veteran did not have any other pertinent physical findings, complications, conditions, signs, or symptoms related to this disability. This disability did not impact her ability to work.

In her May 2013 statement, the Veteran reported taking daily medication for this disability. She had a lot of gas, nausea, regurgitation, and pain/burning in her abdomen, chest, and shoulder. She felt that the chest pain she experienced was due to this disability. She stated that despite daily medication, she had pain and discomfort at least three days per week and it was sometimes severe. She also reported difficulty staying asleep.

In June 2016 the Veteran underwent another VA examination in conjunction with this claim. Again, this examination contained all the information necessary to rate this disability. This examiner reviewed the objective evidence of record, documented the Veteran's current complaints, and performed a thorough clinical evaluation. Therefore, this examination is adequate for VA purposes. At the time of this examination, the Veteran reported problems with gas. The Veteran had been prescribed continuous medication (Prilosec) for this condition, but had discontinued all medications for lack of effectiveness. Her symptoms included persistently recurrent epigastric distress, pyrosis, and reflux. She did not have an esophageal stricture, spasm of esophagus (cardiospasm or achalasia), or an acquired diverticulum of the esophagus. She did not have any associated scars or other pertinent physical findings, complications, conditions, signs or symptoms related to this disability. The Veteran's symptoms of constant gassiness and pyrosis impacted her ability to work.

After a review of the pertinent evidence, the Board determines that a rating higher that that already assigned is not warranted. Based on the above, the Veteran's status post hernia repair with ulcer crater has been manifested by gas pain, gassiness, episodes of gastric distress, pyrosis, reflux, and sleep disturbances caused by esophageal reflux. Although she has argued that her chest and shoulder pains were associated with this disability, the medical evidence of record does not establish either as a symptom of her status post hernia repair with ulcer crater and she has not shown that she possesses the requisite knowledge, skill, or training to determine that these symptoms are part of this disability picture. There is no finding that this disability is productive of considerable impairment of health. As such, the Veteran does not meet the criteria for a 30 percent rating. See 38 C.F.R. § 4.114, DC 7346. Similarly, this disability is not shown to have resulted in material weight loss and hematemesis or melena with moderate anemia; or other symptom combinations productive of severe impairment of health as required for a 60 percent rating. See id. Instead, the Veteran's disability is characterized by some of the symptoms for the 30 percent rating but of less severity as these symptoms do not include associated substernal or arm or shoulder pain and have not resulted in considerable impairment of health. This is consistent with the current 10 percent rating. See id. 

The Board has also considered whether another diagnostic code for disabilities of the digestive system would allow for a higher evaluation, mindful that DC 7301-7329, 7331, 7342, and 7346-7348 cannot be combined. See 38 C.F.R. § 4.114. None of these provides for a higher rating based on the Veteran's current symptoms.

Therefore, the Board finds that the preponderance of the evidence is against a schedular rating higher than 10 percent for status post hernia repair with ulcer crater. Hence the appeal as to a higher rating for this disability must be denied. There is no reasonable doubt to be resolved as to this issue. 38 U.S.C.A. § 5107 (b); 38 C.F.R. §§ 3.102, 4.3.

Also considered by the Board is whether referral is warranted for a rating outside of the schedule. To accord justice in an exceptional case where the scheduler standards are found to be inadequate, the field station is authorized to refer the case to the Chief Benefits Director or the Director, Compensation and Pension Service for assignment of an extraschedular evaluation commensurate with the average earning capacity impairment. 38 C.F.R. § 3.321(b)(1) (2016).

The criterion for such an award is a finding that the case presents an exceptional or unusual disability picture with related factors as marked interference with employment or frequent periods of hospitalization as to render impractical application of regular schedular standards. 38 C.F.R. § 3.321(b). The Board is precluded by regulation from assigning an extraschedular rating under 38 C.F.R. § 3.321(b)(1) in the first instance; however, the Board is not precluded from raising this question, and in fact is obligated to liberally read all documents and oral testimony of record and identify all potential theories of entitlement to a benefit under the law and regulations. Floyd v. Brown, 9 Vet. App. 88 (1996). 

Extraschedular consideration involves a three step analysis. Thun v. Peake, 22 Vet. App. 111 (2008). First, the Board or the RO must determine whether the schedular rating criteria reasonably describe the Veteran's disability level and symptomatology. Id. at 115. If the schedular rating criteria do reasonably describe the Veteran's disability level and symptomatology, the assigned schedular evaluation is adequate, referral for extraschedular consideration is not required, and the analysis stops. Id.

If the RO or the Board finds that the schedular evaluation does not contemplate the Veteran's level of disability and symptomatology, then either the RO or the Board must determine whether the Veteran's exceptional disability picture includes other related factors such as marked interference with employment and frequent periods of hospitalization. Id. at 116. If this is the case, then the RO or the Board must refer the matter to the Under Secretary for Benefits or the Director of the Compensation and Pension Service for the third step of the analysis, determining whether justice requires assignment of an extraschedular rating. Id.

All symptoms and the level of disability resulting from the Veteran's status post hernia repair with ulcer crater are addressed by criteria found in the rating schedule. As noted above, this disability is manifested by gas pain, gassiness, episodes of gastric distress, pyrosis, reflux, and sleep disturbances caused by esophageal reflux, which are contemplated by the rating criteria. Therefore, the first prong of the Thun test is not satisfied and referral for extraschedular consideration is not warranted.

Also considered by the Board is whether the collective effect of his other service connected disability warrants referral for extraschedular consideration. See Johnson v. Shinseki, 762 F.3d 1362 (Fed. Cir. 2014). The Veteran is also service connected for plantar fasciitis, hypertension, Bell's palsy, and bilateral Achilles' tendonitis. There is no collective effect of her other service connected disability that makes her disability picture an exceptional or unusual one with regard to her status post hernia repair with ulcer crater. 

For these reasons, the Board declines to remand this case for referral for extraschedular consideration. 


III. Service Connection - Fibromyalgia

Service connection may be granted for a disability resulting from a disease or injury incurred in or aggravated by active service. See 38 U.S.C.A. §§ 1131 (West 2014); 38 C.F.R. § 3.303(a) (2016). "To establish a right to compensation for a present disability, a Veteran must show: "(1) the existence of a present disability; (2) in-service incurrence or aggravation of a disease or injury; and (3) a causal relationship between the present disability and the disease or injury incurred or aggravated during service"- the so-called "nexus" requirement." Holton v. Shinseki, 557 F.3d 1362, 1366 (Fed. Cir. 2010) (quoting Shedden v. Principi, 381 F.3d 1163, 1167 (Fed. Cir. 2004). 

In this case, there is conflicting evidence with regard to the diagnosis of fibromyalgia. An August 2009 private treatment record shows a diagnosis of fibromyalgia for which she was treated with a Savella two-week starter pack. VA treatment records refer to a historical diagnosis of fibromyalgia. The June 2016 VA examiner, however, found that the Veteran had tenderness in the neck, shoulders, left hip and knee that were attributable to arthritis, but not fibromyalgia. As the August 2009 private treatment record suggests that the Veteran had fibromyalgia during the pendency of this claim, the current disability requirement is satisfied. See McLain v. Nicholson, 21 Vet. App. 319 (2007).

In her May 2013 statement, the Veteran contended that repetitive heavy lifting for six years in service contributed to the development of fibromyalgia in her lower extremities.

The remaining question is whether the record establishes a medical nexus between the Veteran's current fibromyalgia and her active duty military service. To this end, the Veteran underwent a June 2016 VA examination. The June 2016 VA examiner reviewed the objective evidence of record, documented the Veteran's current complaints, and performed a thorough clinical evaluation, then offered an opinion as to the nature of the claimed disability, accompanied by a rationale. Therefore, this examination is adequate for VA purposes. The June 2016 VA examiner found that it was less likely as not that the Veteran's claimed condition was incurred in or caused by her military service. Specifically, this VA examiner found that it was less likely as not that the Veteran had fibromyalgia at all and there was nothing in the service treatment record that could be construed as being fibromyalgia. He noted that she had arthritis of multiple joints including the neck and back which were confusing but were not in the precise Mayo clinic locations. This examiner noted that the VA treatment record did not mention fibromyalgia even as a consideration and it was doubtful that the Veteran had fibromyalgia and certainly she had not been diagnosed with the condition. He further noted that while myalgia (muscle pain) was mentioned on several occasions in the service treatment records usually associated with viral infections or with injuries, this should not be confused with "fibromyalgia," which is a specific if poorly understood and well defined diagnosis. The record does not contain a positive medical nexus opinion. 

As to non-expert or lay opinions with regard to diagnoses or a relationship of a condition to service ("nexus"), whether such opinions are competent evidence depends on the question at issue and the particular facts of the case. 

Although it is error to categorically reject a non-expert nexus opinion, not all questions of nexus are subject to non-expert opinion. See Davidson v. Shinseki, 581 F.3d 1313, 1316 (Fed. Cir. 2009). Whether a layperson is competent to provide a nexus opinion depends on the facts of the particular case. In Davidson, the U.S. Court of Appeals for the Federal Circuit (Federal Circuit) drew from its earlier decision in Jandreau v. Nicholson to explain its holding. Id. 

In that earlier decision, the Federal Circuit addressed the competency of lay diagnoses, stating as follows: "[l]ay evidence can be competent and sufficient to establish a diagnosis of a condition when (1) a layperson is competent to identify the medical condition, (2) the layperson is reporting a contemporaneous medical diagnosis, or (3) lay testimony describing symptoms at the time supports a later diagnosis by a medical professional." Jandreau v. Nicholson, 492 F.3d 1372, 1377 (Fed. Cir. 2007). 

The Federal Circuit provided an example, stating that a layperson would be competent to identify a simple condition such as a broken leg, but not competent to provide evidence as to a more complex medical question such as a form of cancer. Id. at n.4. 

Also of note is that the Veterans Court has explained that non-expert witnesses are competent to report that which they have observed with their own senses. See Layno v. Brown, 6 Vet. App. 465, 469 (1994). 

Taking Davidson, Jandreau, and Layno together, leads the Board to the conclusion that the complexity of the question and whether a nexus opinion could be rendered based on personal observation are factors in determining whether a non-expert nexus opinion or diagnosis is competent evidence. In this case, the Veteran's lone diagnosis of fibromyalgia was in 2009, nearly 25 years after her separation from service. Additionally, the Veteran has other conditions, including arthritis, which may be responsible for her reported symptoms. The Veteran is not shown to possess the necessary knowledge, skill, or expertise to differentiate between arthritis and fibromyalgia. As such, the Veteran is not competent to address etiology in the present case.

For the reasons stated above, the Board finds that the preponderance of evidence is against the Veteran's claim of entitlement to service connection for fibromyalgia. Therefore, her appeal must be denied. There is no reasonable doubt to be resolved as to this issue. See 38 U.S.C.A. § 5107 (b); 38 C.F.R. § 3.102; Gilbert v. Derwinski, 1 Vet. App. 49 (1990).



ORDER

An initial rating higher than 10 percent for status post hernia repair with ulcer crater is denied.

Service connection for fibromyalgia (claimed as painful and swollen joints) is denied.



______________________________________________
JAMES G. REINHART
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs