Citation Nr: 1749181 
Decision Date: 10/31/17 Archive Date: 11/06/17

DOCKET NO. 09-22 963A ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Waco, Texas


THE ISSUE

Entitlement to an initial rating in excess of 10 percent prior to June 1, 2009, and in excess of 20 percent thereafter for degenerative disc disease (DDD) with degenerative joint disease (DJD) of the lumbar spine.


REPRESENTATION

Appellant represented by: Disabled American Veterans


WITNESS AT HEARING ON APPEAL

The Veteran


ATTORNEY FOR THE BOARD

S. Morrad, Associate Counsel
INTRODUCTION

The Veteran had active service from January 1976 to November 1988.

This matter comes before the Board of Veterans' Appeals (Board) on appeal from a February 2008 rating decision that granted service connection for DDD with DJD of the lumbar spine, and assigned a 10 percent evaluation; effective from October 4, 2004. 

The Veteran testified at a Decision Review Officer hearing in April 2009 and a copy of that transcript is of record.

In an April 2012 decision, the RO assigned an increased rating to 20 percent, effective June 1, 2009. As this is not considered a full grant of all benefits possible the claim is still before the Board. See AB v. Brown, 6 Vet. App. 35, 38 (1993).

The Veteran testified at a Board hearing before the undersigned in May 2013.

In an October 2013 decision, the Board granted an effective date of November 3, 1988, for the grant of service connection for DDD with DJD of the lumbar spine. The Board remanded the issue of entitlement to a higher initial rating for DDD with DJD of the lumbar spine for further development in October 2013 and February 2017. 

New and relevant documentary evidence has not been added to the record since the July 2017 Supplemental Statement of the Case (SSOC).

This appeal was processed using the Veterans Benefits Management System (VBMS) and virtual VA paperless claims processing systems.





FINDINGS OF FACT

1. Prior to June 1, 2009, even when considering functional impairment caused by factors such as pain, weakness, fatigability, incoordination, or pain on movement of a joint, as well as actually painful, unstable, or malaligned joints due to healed injury, the Veteran's low back disability was manifested by characteristic pain on motion.

2. On and after June 1, 2009, even when considering functional impairment caused by factors such as pain, weakness, fatigability, incoordination, or pain on movement of a joint, as well as actually painful, unstable, or malaligned joints due to healed injury, the Veteran's low back disability was manifested by limitation of flexion to no less than 60 degrees.


CONCLUSIONS OF LAW

1. Prior to June 1, 2009, the criteria for a rating in excess of 10 percent for a low back disability have not been met. 38 U.S.C.A. §§ 1155, 5102, 5103, 5103A, 5107 (West 2014); 38 C.F.R. §§ 3.159, 4.1, 4.2, 4.3, 4.7, 4.20, 4.40, 4.45, 4.71a, Diagnostic Codes 5292, 5293, 5295 (2002, 2003); 38 C.F.R. § 4.71a, Diagnostic Code 5237 (2016).

2. On or after June 1, 2009, the criteria for a rating in excess of 20 percent for a low back disability have not been met. 38 U.S.C.A. §§ 1155, 5102, 5103, 5103A, 5107 (West 2014); 38 C.F.R. §§ 3.159, 4.1, 4.2, 4.3, 4.7, 4.20, 4.40, 4.45, 4.71a, Diagnostic Codes 5292, 5293, 5295 (2002, 2003); 38 C.F.R. § 4.71a, Diagnostic Code 5237 (2016).






REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

Duty to Notify and Assist

The Veterans Claims Assistance Act (VCAA) provides that VA shall apprise a claimant of the evidence necessary to substantiate his or her claim for benefits and that VA shall make reasonable efforts to assist a claimant in obtaining evidence unless no reasonable possibility exists that such assistance will aid in substantiating the claim. 

Regarding the Veteran's claim for an increased rating for a low back disability, service connection has been granted and the initial rating has been assigned. The claim of service connection has been more than substantiated; the claim has been proven, thereby rendering 38 U.S.C.A. § 5103(a) notice no longer required because the purpose that the notice was intended to serve has been fulfilled. Once the claim for service connection has been substantiated, the filing of a notice of disagreement with the RO's decision, rating the disability, does not trigger additional 38 U.S.C.A. § 5103(a) notice. Therefore, further VCAA notice under 38 U.S.C.A. § 5103(a) and § 3.159(b)(1) is no longer applicable in the claim for increased ratings. Goodwin v. Peake, 22 Vet. App. 128, 136 (2008).

VA also has a duty to assist the Veteran in the development of a claim. This duty includes assisting the Veteran in the procurement of service treatment records and relevant post-service treatment records and providing an examination when necessary. 38 U.S.C.A § 5103A (West 2014); 38 C.F.R. § 3.159 (2016). 

VA has done everything reasonably possible to assist the Veteran with respect to his claim for benefits. The Veteran has been medically evaluated in conjunction with his low back disability claim and all identified and available relevant treatment records have been secured.

Lastly, the Board finds that there has been substantial compliance with the prior Board remand. Stegall v. West, 11 Vet. App. 268 (1998).

The Board thus finds that all necessary development has been accomplished and appellate review may proceed. See Bernard v. Brown, 4 Vet. App. 384 (1993).

Rules and Regulations

Disability evaluations are determined by the application of VA's Schedule for Rating Disabilities (Rating Schedule), 38 C.F.R. Part 4. The percentage ratings contained in the Rating Schedule represent, as far as can be practicably determined, the average impairment in earning capacity resulting from diseases and injuries incurred or aggravated during military service and the residual conditions in civil occupations. 38 U.S.C.A. § 1155; 38 C.F.R. §§ 3.321(a), 4.1.

The basis of disability evaluations is the ability of the body as a whole to function under the ordinary conditions of daily life, including employment. 38 C.F.R. § 4.10. Where there is a question as to which of two evaluations shall be applied, the higher evaluation will be assigned if the disability picture more nearly approximates the criteria required for that rating. Otherwise, the lower rating will be assigned. 38 C.F.R. § 4.7. 

In Fenderson v. West, 12 Vet. App. 119 (1999), it was held that evidence to be considered in the appeal of an initial assignment of a disability rating was not limited to that reflecting the then-current severity of the disorder. Cf. Francisco v. Brown, 7 Vet. App. 55, 58 (1994). In Fenderson, the Court also discussed the concept of the 'staging' of ratings, finding that, in cases where an initially assigned disability evaluation has been disagreed with, it was possible for a veteran to be awarded separate percentage evaluations for separate periods based on the facts found during the appeal period. Id. at 126-127.

The Court has held that evaluation of a service-connected disability involving a joint rated on limitation of motion requires adequate consideration of functional loss due to pain under 38 C.F.R. § 4.40 and functional loss due to weakness, fatigability, incoordination, or pain on movement of a joint under 38 C.F.R. § 4.45. See, in general, DeLuca v. Brown, 8 Vet. App. 202 (1995).

Another intent of the schedule is to recognize painful motion with joint or periarticular pathology as productive of disability. It is the intention to recognize actually painful, unstable, or malaligned joints, due to healed injury, as entitled to at least the minimum compensable rating for the joint. 38 C.F.R. § 4.59; Burton v. Shinseki, 25 Vet. App. 1 (2011).

Although pain may cause a functional loss, pain itself does not constitute functional loss. Rather, pain must affect some aspect of 'the normal working movements of the body' such as 'excursion, strength, speed, coordination, and endurance,' in order to constitute functional loss. Mitchell v. Shinseki, 25 Vet. App. 32, 38-43 (2011) (quoting 38 C.F.R. § 4.40).

Actually painful, unstable, or malaligned joints due to healed injury are entitled to at least the minimum compensable rating for the joint. 38 C.F.R. § 4.59; Burton v. Shinseki, 25 Vet. App. 1 (2011).

The Veteran has claimed entitlement to a higher initial rating for a low back disability, rated as DDD with DJD of the lumbar spine. This disability has been rated as lumbosacral strain. It has been assigned a 10 percent rating from November 3, 1988, through May 31, 2009, and a 20 percent rating on and after June 1, 2009. 

During the pendency of the Veteran's appeal, VA promulgated new regulations for the evaluation of intervertebral disc syndrome (IVDS), 38 C.F.R. § 4.71a, Diagnostic Code 5293, effective September 23, 2002. See 67 Fed. Reg. 54,345 (Aug. 22, 2002) (codified at 38 C.F.R. pt. 4). Later, VA promulgated new regulations for the evaluation of the remaining disabilities of the spine, effective September 26, 2003. See 68 Fed. Reg. 51,454 (Aug. 27, 2003) (codified at 38 C.F.R. pt. 4). The amendments renumber the diagnostic codes and create a General Rating Formula for Diseases and Injuries of the Spine, based largely on limitation or loss of motion, as well as other symptoms.

When amended regulations expressly state an effective date and do not include any provision for retroactive applicability, application of the revised regulations prior to the stated effective date is precluded. 38 U.S.C.A. § 5110(g); DeSousa v. Gober, 10 Vet. App. 461, 467 (1997); VAOPGCPREC 3-2000. Therefore, as each set of amendments has a specified effective date without provision for retroactive application, neither set of amendments may be applied prior to its effective date. As of those effective dates, the Board must apply whichever version of the rating criteria is most favorable to the Veteran. See Kuzma v. Principi, 341 F.3d 1327 (Fed. Cir. 2003).

Prior to September 23, 2002

Prior to September 26, 2003, Diagnostic Code 5292 provided a 10 percent rating for slight limitation of motion of the lumbar spine. A 20 percent rating was warranted for moderate limitation of motion. A 40 percent rating was warranted for severe limitation of motion. 38 C.F.R. § 4.71a, Diagnostic Code 5295 (as in effect prior to September 26, 2003). 
 
Prior to September 26, 2003, Diagnostic Code 5294 provided a 0 percent rating for lumbosacral strain with slight subjective symptoms only. A 10 percent rating was assigned for characteristic pain on motion. A 20 percent rating was provided for a moderate lumbosacral strain with muscle spasm on extreme forward bending, loss of lateral spine motion, unilateral, in a standing position. A 40 percent rating was assigned for a severe lumbosacral strain with listing of the whole spine to opposite side, positive Goldthwaite's sign, marked limitation of forward bending in a standing position, loss of lateral motion with osteo-arthritic changes, or narrowing or irregularity of joint space, or some of the above with abnormal mobility on forced motion. 38 C.F.R. § 4.71a, Diagnostic Code 5295 (as in effect prior to September 26, 2003). 

For reference, normal forward flexion of the thoracolumbar spine for VA compensation purposes is 0 to 90 degrees, extension is 0 to 30 degrees, left and right lateral flexion are 0 to 30 degrees, and left and right lateral rotation are 0 to 30 degrees. 38 C.F.R. § 4.71a, Plate V (2011).

Prior to September 23, 2002, Diagnostic Code 5293 provided ratings based on intervertebral disc syndrome (IVDS) based on the severity of the disability. A 10 percent rating was warranted for mild disability. A 20 percent rating was warranted for moderate disability with recurring attacks. A 40 percent rating was warranted for severe disability with recurring attacks and little intermittent relief. A 60 percent rating was warranted for pronounced disability with persistent symptoms compatible with sciatic neuropathy with characteristic pain and demonstrable muscle spasm, absent ankle jerk, or other neurological findings appropriate to the site of the diseased discs, with little intermittent relief. 38 C.F.R. § 4.71a, DC 5293 (as in effect prior to September 23, 2002).

Words such as 'severe,' 'moderate,' and 'mild' are not defined in the Rating Schedule. Rather than applying a mechanical formula, VA must evaluate all evidence to the end that decisions will be equitable and just. 38 C.F.R. § 4.6 (2016). Although the use of similar terminology by medical professionals should be considered, it is not dispositive of an issue. Instead, all evidence must be evaluated in arriving at a decision regarding a request for an increased disability rating. 38 U.S.C.A. § 7104 (West 2014); 38 C.F.R. §§ 4.2, 4.6 (2016).

The Board will also consider whether higher ratings may be assigned pursuant to Diagnostic Codes 5292 (limitation of motion of the lumbar spine) or 5293 (IVDS).

Turning to the evidence of record for the period from November 3, 1988, through
September 23, 2002, the Veteran was provided treatment for his low back condition in November 1999. The treatment records note the Veteran moving stiffly, and no pain to palpation along the thoracic-lumbar spine. No paravertebral spasms were found. There was pain with lying down on the exam table, but no pain with straight leg raising. The Veteran was able to flex to full 70 degrees of the thoracic lumbar spine with some pain in flexion. Private treatment records from May 2001 show a tender mid lumbar and spasm.

Based on the above, the Board finds that the medical evidence from this period does not demonstrate that the Veteran had muscle spasm on extreme forward bending, or loss of lateral spine motion. Accordingly, the Board finds that a rating in excess of 10 percent is not warranted based on the former rating criteria of lumbosacral strain.

As the Veteran was found to be able to flex to 70 degrees (a loss of only less than one-third of total range of motion), the Board does not find that the Veteran had "moderate" limitation of motion under DC 5292. Additionally, the Veteran was not found to have IVDS, so a higher rating under DC 5293 is not warranted.

From September 23, 2002, through September 25, 2003

Effective September 23, 2002, the rating criteria for IVDS changed. Effective that date, under Diagnostic Code 5293, IVDS is evaluated (preoperatively or postoperatively) based either on the total duration of incapacitating episodes over the past 12 months or by combining under 38 C.F.R. § 4.25 (combined ratings table) separate evaluations of its chronic orthopedic and neurologic manifestations along with evaluations for all other disabilities, whichever method results in the higher evaluation. A 20 percent rating is assigned for incapacitating episodes having a total duration of at least two weeks but less than four weeks during the past 12 months. A 40 percent rating is assigned for incapacitating episodes having a total duration of at least four weeks but less than six weeks during the past 12 months. A maximum 60 percent rating is assigned when there are incapacitating episodes having a total duration of at least six weeks during the past 12 months. 38 C.F.R. § 4.71a, Diagnostic Code 5293.

Note (1) provides that for the purposes of evaluations under Diagnostic Code 5293, an incapacitating episode is a period of acute signs and symptoms due to IVDS that requires bed rest prescribed by a physician and treatment by a physician. 'Chronic orthopedic and neurological manifestations' means orthopedic and neurologic signs and symptoms resulting from IVDS that are present constantly, or nearly so.

The Veteran's VA treatment records from May 2003 show that he reported mild pressure/pain to the lower part of his lumbosacral spine. No pain with SLR to 45 degrees was noted. Flexion/extension, and internal/external rotation of the bilateral hips were noted to be intact. Treatment notes from June 2003 show that the Veteran had slight discomfort to palpation at L3-4, and L4-5. No paravertebral spasms were noted. Straight leg raising to 45 degrees with minor back discomfort was found, with pain remaining in the back, non-radiating. The thoracic/lumbar spine had full flexion to 80 degrees, extension to -10 degrees. An impression of DJD was provided at the time.

Based on the above, the Board finds that the medical evidence from this period does not demonstrate that the Veteran had muscle spasm on extreme forward bending, or loss of lateral spine motion. Accordingly, the Board finds that a rating in excess of 10 percent is not warranted based on the former rating criteria of lumbosacral strain.

As the Veteran was found to have flexion at 80 degrees (a loss of only less than one-third of total range of motion), the Board does not find that the Veteran had "moderate" limitation of motion under DC 5292. Additionally, the Veteran was not found to have IVDS, so a higher rating under DC 5293 is not warranted.

On and After September 26, 2003

Effective September 26, 2003, back disabilities are rated based on the General Rating Formula for Diseases and Injuries of the Spine, while IVDS (preoperatively or postoperatively) is evaluated based on either the General Rating Formula or on the Formula for Rating Intervertebral Disc Syndrome Based on Incapacitating Episodes, whichever method results in the higher evaluation. (The rating criteria based on incapacitating episodes do not change from the criteria that were established effective September 23, 2002.)

The General Rating Formula assigns a 10 percent evaluation for forward flexion greater than 60 degrees but not greater than 85 degrees; or, combined range of motion greater than 120 degrees but not greater than 235 degrees; or, muscle spasm, guarding, or localized tenderness not resulting in abnormal gait or abnormal spinal contour; or, vertebral body fracture with loss of 50 percent or more of the height.

A 20 percent evaluation is warranted for forward flexion greater than 30 degrees but not greater than 60 degrees; or, combined range of motion not greater than 120 degrees; or, muscle spasm or guarding severe enough to result in an abnormal gait or abnormal spinal contour such as scoliosis, reversed lordosis, or abnormal kyphosis.

An evaluation of 40 percent is warranted when there is forward flexion to 30 degrees or less or favorable ankylosis of the entire thoracolumbar spine.

An evaluation of 50 or greater requires unfavorable ankylosis of the entire thoracolumbar spine.

These criteria are controlling regardless of whether there are symptoms such as pain (whether or not it radiates), stiffness, or aching in the area of the spine affected by residuals of injury or disease.

Private treatment records from April 2004 show that the Veteran's gait, heel and toe walk were normal. No abnormalities to inspection of his back. No tenderness to palpation. Extension caused more back pain than flexion. 

At a February 2008 VA examination, forward flexion was noted to be 70 degrees. The combine ranged of motion was 245 degrees. The VA examiner noted evidence of pain on motion. No additional limitation by pain, fatigue, weakness, loss of coordination or lack of endurance following repetitive movement to include a minimum of three repetitions of range of motion testing in all spheres. No spasms, weakness, tenderness, or guarding were found. The Veteran's gait was normal. Normal appearing spinal contour was noted. 

VA treatment records from September 2008 show that the Veteran's gait was stable. He walked with a cane and had knee braces. 

At a June 2009 VA examination, forward flexion was noted to be 60 degrees. The combined range of motion was 300 degrees. The VA examiner noted pain on motion. There were no additional limitations after three repetitions. No incapacitating episodes of spine disease were noted. No muscle spasms, localized tenderness or guarding severe enough to be responsible for an abnormal gait or abnormal spinal contour were found. 

Private treatment records from October 2010 show that the Veteran had a gait within normal limits. He had a full range of motion except extension and right lateral bending for his lumbar spine.

Private treatment records from November 2010 show that an inspection of the lumbar spine revealed no scoliosis. Palpation of the lumbar facets revealed pain on the sides of the L3-S1 region. Anterior flexion of the lumbar spine was noted to be a full 90 degrees, with pain. 

At a November 2013 VA examination, forward flexion was noted to be 70 degrees, with objective painful motion beginning at 60 degrees. The combined range of motion was 165 degrees, with objective evidence of painful motion at a combined 125 degrees. After repetitive use testing, forward flexion was at 70 degrees, with a combined range of motion at 165 degrees. No localized tenderness, pain to palpation, guarding, or muscle spasms of the thoracolumbar spine were found. The Veteran was found not to have IVDS. The VA examiner noted that the Veteran has mild chronic bilateral L4-L5 radiculopathy with intermittent leg pain radiating into the buttock and thigh consistent with sciatica, not IVDS.

VA treatment records from January 2014 show that the Veteran reported back spasms.

March 2015 private treatment records show normal curvature for thoracolumbar appearance. Bilateral spasms were noted to be worse on the right. An assessment of degeneration of cervical intervertebral disc was provided at the time.

At the Veteran's most recent VA examination in April 2017, forward flexion was noted to be 70 degrees. The examiner indicated that there was no practical way to perform passive range of motion of the spine. The examiner also indicated that the examination was performed during a flare-up. The combined range of motion was 205 degrees. There was no evidence of pain with weight bearing or non-weight bearing. There was no additional loss of function or range of motion after repetitive use testing. There was no muscle spasms, but there was guarding not resulting in abnormal gait or spinal contour. The examiner noted no radiculopathy, no ankylosis, and no neurologic abnormalities. IVDS was found, but no episodes of acute signs and symptoms due to IVDS that required bed rest prescribed by a physician in the last 12 months were found. The examiner noted that the Veteran experienced pain on the range of motion testing manifested by groaning. He added that the Veteran was observed while removing/donning shoes and socks for the exam and was able to flex back to a somewhat greater degree than noted during formal range of motion testing. The examiner noted that the Veteran's back condition impacts his ability to work because it can be expected to impair his ability for prolonged walking, bearing heavier loads, bending/twisting, or higher impact activities such as running, jumping, and climbing.

The Board finds that for the period between September 26, 2003 and May 31, 2009, a rating in excess of 10 percent for the Veteran's low back disability is not warranted under the old or new rating criteria. As shown above, the VA examination in February 2008 showed flexion at 70 degrees. There were no spasms, weakness, tenderness, or guarding. The Veteran's gait was normal. Additionally, VA and private treatment records from this period do not support a finding that the Veteran had a "moderate" level of limitation of motion, and the Veteran was not found to have IVDS during this time. 

From June 1, 2009, the Board finds that a rating in excess of 20 percent for the Veteran's low back disability is not warranted under the old or new rating criteria. The June 2009 and November 2013 VA examinations showed the most limiting forward flexion at 60 degrees, warranting a 20 percent rating under Diagnostic Code 5237 for lumbosacral strain. At no time after June 1, 2009 was the Veteran found to have forward flexion of the thoracolumbar spine at 30 degrees or less, or favorable ankylosis of the entire thoracolumbar spine to warrant a higher rating of 40 percent under Diagnostic Code 5237. Under the former regulations in effect prior to September 26, 2003, the Veteran would not be able to obtain a higher rating under Diagnostic Code 5292 because there is no evidence showing that his limitation of motion is severe, warranting a rating of 40 percent. Also, under the former Diagnostic Code 5295, a higher rating of 40 percent is not warranted unless there is severe lumbosacral strain, shown by marked limitation of forward bending in standing position, loss of lateral motion with osteoarthritic changes, or abnormal mobility, or forced motion. While the Veteran was found to have IVDS at the April 2017 VA examination, the evidence reflects that he has not been found to have had any incapacitating episodes requiring treatment and bed rest prescribed by a physician. Additionally, there is no evidence that the Veteran's IVDS is severe to warrant a higher rating under the former regulations effective before September 23, 2002. Therefore, a higher rating under Diagnostic Code 5293 is not warranted. As such, entitlement to a rating in excess of 20 percent is not warranted under any of the potentially applicable rating criteria from June 1, 2009.

In so finding, the Board notes that the Veteran is competent to report on symptoms and he is sincere in his belief that he is entitled to a higher rating. His lay evidence, however, is outweighed by competent and credible medical evidence that evaluates the true extent of the low back impairment based on objective data coupled with the lay complaints. In this regard, the Board notes that the VA examiners have the training and expertise necessary to administer the appropriate tests for a determination of the type and degree of the impairment associated with the Veteran's complaints. For these reasons, greater evidentiary weight is placed on the examination findings in regard to the type and degree of impairment.

Neither the Veteran nor his representative has raised any other issues, nor have any other issues been reasonably raised by the record. See Doucette v. Shulkin, 28 Vet. App. 366 (2017) (confirming that the Board is not required to address issues unless they are specifically raised by the claimant or reasonably raised by the evidence of record).


ORDER

Prior to June 1, 2009, entitlement to an initial rating in excess of 10 percent for the Veteran's DDD with DJD of the lumbar spine is denied.

On and after June 1, 2009, entitlement to an initial rating in excess of 20 percent for the Veteran's DDD with DJD of the lumbar spine is denied.



____________________________________________
TANYA SMITH
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs